J. MICHAEL COOMBS, ESQ., Utah Bar No. 3639
MABEY & COOMBS, L.C.
3098 South Highland Drive, Suite 323
Salt Lake City, UT 84106-6001
Telephone: 801-467-2779
Fax No. 801-467-3256
jmcoombs@sisna.com

ELLIOTT N. TAYLOR, ESQ., Utah Bar No. 5151
TAYLOR AND ASSOCIATES, INC.
6313 Shenandoah Park Avenue
Salt Lake City, UT 84121
Telephone: 801-207-8272
Fax No. 801-606-2779
elliott@taylorlaw.org

ATTORNEYS FOR DEFENDANT

IN AND BEFORE THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>        Plaintiff,<br><br>v.<br><br>R. GORDON JONES,<br><br>        Defendant. | **DEFENDANT JONES'S REPLY MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT OF DISMISSAL**<br><br>Case No. 1:13-cv-00163-BSJ<br><br>Judge Bruce S. Jenkins |

Defendant R. Gordon Jones ("Jones" or "Defendant"), by and through counsel, hereby

files the following Reply Memorandum of Law in Support of his Rule 56(a), *Fed. R. Civ. Pro.*,

Motion for a ruling and order dismissing the Complaint filed by the Plaintiff, Securities and

Exchange Commission ("SEC" or "Commission") on the ground that the Commission has

produced insufficient evidence that he has "practiced [accounting] before the Commission" in violation of Rule 102(f) of the Commission's Rules of Practice and thus, his May 4, 2001 Bar Order.

This is not to ignore that after the enactment of the Sarbanes-Oxley Act of 2002 ("SOX") and its mandated bifurcation of accounting roles in regard to public company financial statements, no legitimate or rational regulatory purpose is served in regulating mere "preparers" of draft financial statements like Jones, that is, persons not statutorily *responsible* for the same when filed in final form on the SEC's EDGAR database. *See* Reply Point VI below; *see also Loving v. IRS,* 742 F.3d 1013; 2014 U.S. App. LEXIS 2512 (DC Cir., February 11, 2014), an almost perfect analogy to the case at bar. For this reason as well, Jones's Motion should be granted and this case dismissed.

This Memorandum is supported by a Motion to Strike Commission Exhibits 2-6, exhibits that involve or relate to third party investigative witnesses Nick Jones, Keith Ellison, Bradley Gibb, including testimony purportedly related to J&J Consultants, LLC ("J&J"), an entity whose corporate deposition under Rule 30(b)(6), *Fed. R. Civ. Pro.*, has never been taken in this matter or in the prior investigatory phase leading to this action. These several exhibits are also irrelevant to whether the Commission has a legitimate or rational interest in regulating mere "preparers" of draft financial statements of public companies after SOX and therefore, such exhibits should be stricken on that basis as well. *See* Rule 402, *Fed. R. Evid.* (only relevant evidence is admissible). While Jones's Reply Memorandum exceeds the 10-page limit, had Jones put Reply Point II below in his Motion to Strike, this Memorandum would be well within the 10-page limit. Jones's counsel chose to include it here for ease of reading and understanding and, as a result, his Motion to Strike and Supporting Memorandum are short.

## MEMORANDUM OF POINTS AND AUTHORITIES

## TABLE OF CONTENTS

Page

INTRODUCTORY REPLY............................................................................1

ARGUMENT............................................................................................2

Reply Point I—CONTRARY TO THE COMMISSION'S OPPOSITION, THE BAR ORDER DOES NOT IDENTIFY WHAT IS NECESSARY TO VIOLATE IT.  THIS MAKES RULE 102(f) APPLICABLE.  MOREOVER, BECAUSE THE ORDER WAS DRAFTED BY A MERE COMMISSION STAFFER, IT HAS NO ABILITY TO TRUMP RULE 102(f) OF THE COMMISSION'S OWN RULES OF PRACTICE...............2

A.     Rule 102(f) and its requirements control what is at stake in this case.......................3

Reply Point II—SEVERAL EVIDENTIARY DEFECTS IN THE OPPOSITION FAIL TO CREATE A GENUINE ISSUE OF MATERIAL FACT...................................5

    A.  The Commission cannot prove its case or dispute facts by the use of a "dump truck" presentation of "evidence," including the use of unauthenticated documents it fails to tie into Rule 102(f)....................................................................5

    B.  Investigative testimony from third parties is hearsay, denies Jones the right to cross-examine such witnesses and is inadmissible to defeat Jones's motion under Rule 56(c)(2).  Such extensive testimony goes beyond a sworn statement on the nature of an affidavit.  For this reason, all such testimony should be stricken..........6

    C.  J&J Consultants, LLC's deposition has not been taken under Rule 30(b)(6), *Fed. R. Civ. Pro.*, and therefore, the Commission has no basis to dispute a fact on account of anything J&J purportedly testified to.  It didn't testify to anything.  Exhibit 6 is speculative and lacking in foundation and should therefore be stricken..............7

Reply Point III—THE COMMISSION FAILS TO "CONTROVERT" JONES'S SUPPORTING AFFIDAVIT WITH DIRECT, ADMISSIBLE EVIDENCE AND THEREFORE ITS AVERMENTS ARE DEEMED ADMITTED UNDER DUCivR 56-1(c)......9

Reply Point IV—THE COMMISSION'S OPPOSITION ERRONEOUSLY ATTRIBUTES CONDUCT OF J & J CONSULTING TO JONES HIMSELF.  J & J CONSULTANTS, INCLUDING ANY EMPLOYEE OF J&J, CAN LAWFULLY "PREPARE" DRAFT FINANCIAL STATEMENTS FOR AUDIT, REVIEW, AND APPROVAL BY SOX-DESIGNATED PEOPLE WHO "CONSENT" TO AND ARE RESPONSIBLE FOR THE SAME.  THE COMMISSION'S OPPOSITION ALSO FALSELY PRESUMES THAT JONES IS J&J'S ALTER EGO............................................................................10

<u>Reply Point V</u>—THE COMMISSION'S DESPERATE EFFORT TO IGNORE ITS OWN
RULE 102(f), FURTHER IGNORING SOX AND ITS LAWFUL REQUIREMENT
THAT "PREPARERS" BE SEPARATE AND DISTINCT FROM "AUDITORS,"
DOES <u>NOT</u> DEFEAT JONES'S MOTION......................................................10

    **A.** <u>The Commission has produced no admissible evidence that Jones individually
"transacted business with the Commission."</u>...............................................10

    **B.** <u>The Commission fails to identify or define what "prepare" means in this case,
thereby refusing to divulge its own regulatory limits</u>................................... 11

    **C.** <u>The Commission has produced no admissible evidence that an Edgar-filed public
company financial statement, a draft of which Jones may have initially "prepared"
or worked on, was filed on Edgar "with [Jones's] consent," all as Rule 102(f)
requires.  They have further produced no evidence that the "filed with consent"
requirement of Rule 102(f) is satisfied solely if a person participated in the
"preparation" of an initial draft public company financial statement</u>...................11

<u>Reply Point VI</u>—AFTER SOX, THE COMMISSION HAS NO RATIONAL BASIS OR
LEGITIMATE REASON OR PURPOSE TO REGULATE MERE "PREPARERS" OF
FINANCIAL STATEMENTS, PERSONS LIKE JONES WHO, UNDER SOX, ARE <u>NOT</u>
LEGALLY RESPONSIBLE THEREFOR.  FOR THIS REASON, THE BAR ORDER IS
MOOT AND UNENFORCEABLE.  BASED ON *LOVING V. IRS*, THIS ACTION
SHOULD THEREFORE BE DISMISSED...........................................................12

CONCLUSION...................................................................................13

LIST OF EXHIBITS

    Exhibit "A"        The full text of the Sarbanes-Oxley Act of 2002 ("SOX")

## INTRODUCTORY REPLY

Jones has made a motion for summary judgment on the ground that the Commission
lacks sufficient evidence to prove that he violated Rule 102(f), the specific rule governing
whether he violated a certain May 4, 2001 Bar Order ("Bar Order") prohibiting him from
"practicing [accounting] before the Commission." The Commission vehemently disagrees with
this approach and contends that all it must do in this case is prove that Jones violated the Bar
Order—whatever *that* means.[1] If this were true, it would mean that any Commission Staff
Attorney could insert language in a bar order, regardless of the law, and the respondent or
defendant would be bound thereby. It is thus stunning to observe the Commission so vigorously
repudiate the application of its own rule defining "practicing [accounting] before the
Commission." The Commission secondarily argues that Rule 102(f) doesn't really mean what it
says. Instead, its requirements are mere examples. At the same time, if you dispute what a
Commission staff attorney says "practicing before the Commission" means, well, you
necessarily have bad motives. This is exemplified by the rude, unprofessional and patronizing
nature of the Commission's Opposition. *See e.g.*, p. 1, Opp. (accusing Jones and his counsel of
"fabricating" definitions and "creating a sham paradigm"); p. 2, top, Opp. (calling Jones and his

---

[1] As has been pointed out previously in this case, prior to the enactment of the Sarbanes-Oxley Act of
2002 ("SOX") auditors almost always "prepared" or "assisted in the preparation" of the financial
statements they then audited. SOX, which was enacted after the Bar Order, recognized and addressed this
inherent conflict of interest which had caused the Enron and WorldCom debacles, thereby prohibiting
auditors from auditing financial statements they also had any hand in "preparing." The Commission's
pre-SOX Bar Order subject of this case obviously fails to recognize this new statutory scheme.
Furthermore, Jones's Bar Order did not come about because of a mistake in "preparing" financial
statements, only for auditing errors when Jones acted as an auditor in 1995. Since SOX was enacted 12
years ago, the Enforcement Division of the Commission (which is never specifically involved in
reviewing the periodic disclosures filed by an issuer), doesn't seem to understand that SOX provides
multiple layers of review and accountability unconnected to the physical preparation of the financial
statements before the financial statements are audited or reviewed by the auditor. Financial statements
filed by issuers in periodic disclosures (depending upon whether they are included in a Form 10-K or 10-
Q), must be approved and certified by the principal executive and accounting officers of the issuer in
accordance with Section 302 of SOX (*i.e.*, signed off or "consented to," in writing, by those parties
responsible under SOX). The Commission's fundamental disregard for the intent of SOX is evidenced in
¶ 3(b), p. 5 (contending that Jones, in participating in answering an auditor's inquiries, acted himself as an
"auditor"); p. 33 (talking about Jones's "participation in audits"); and p. 34 (accusing Jones of doing
"audit work"), Comm. Opp., and Exhibit 3 thereto (compiling information showing that Jones was
involved in "audits" and thus apparently acting as an "auditor"). The fact is that Jones isn't an auditor,
didn't act as an "auditor," and did no audits. *See* Jones's Motion to Strike filed herewith.

counsel "deceitful"); p. 10, bott., Opp. (accusing Jones and his counsel of being "confused" and "obfuscating"); p. 36, bott., Opp. (further accusing Jones and his counsel of "fabricating things"). There is no place in this action for such personal attacks.  Reasonable people should be free to differ on what laws apply to the facts of this case and why.

In pp. 3-10, Opp., the Commission, in seeking to create an issue of fact where none exists, parses every word and phrase of Jones's Statement of Undisputed Facts, nitpicking every averment except grammar.  These are not legitimate factual disputes.  Jones has never denied that he participated in the initial creation of draft financial statements which were eventually changed and approved by the company, the company's auditors, signed off by SOX-designated persons, including independent auditors, and later filed in some fashion on the Commission's EDGAR database—final acts over which Jones had no control or say-so.

The Commission argues jurisdiction under Section 21(e) of the Exchange Act and what its Complaint seeks to accomplish, none of which Jones has ever disputed.  This discussion on pp. 10-11, Opposition, is therefore unnecessary.

The Commission then proceeds to argue disgorgement on pp. 12-13 of its Opposition, an issue that has no bearing on Jones's Motion for Summary Judgment if the Commission can't prove what it calls "Element I."  *See* pp. 17-19, top, Comm. Opp.  This entire discussion has nothing to do with Jones's Motion, much less whether the Commission has a legitimate interest in regulating mere "preparers" of financial statements after SOX.  *See* Reply Point VI below.

Because the Commission's counter-arguments in large part address arguments Jones has never made and then ignores the fact that the Commission has no legitimate and rational interest in regulating mere "preparers" of financial statements after SOX (*see Loving v. IRS, infra*), Jones is entitled to a summary judgment of dismissal of this action as a matter of law.

## ARGUMENT

**<u>Reply Point I</u>—CONTRARY TO THE COMMISSION'S OPPOSITION, THE BAR ORDER DOES NOT IDENTIFY WHAT IS NECESSARY TO VIOLATE IT.  THIS**

**MAKES RULE 102(f) APPLICABLE.  MOREOVER, BECAUSE THE ORDER WAS**

**DRAFTED BY A MERE COMMISSION STAFFER, IT HAS NO ABILITY TO TRUMP**

**RULE 102(f) OF THE COMMISSION'S OWN RULES OF PRACTICE.**

A.     <u>**Rule 102(f) and its requirements control what is at stake in this case**</u>.  The principal point of the Commission's Opposition is that Rule 102(f) of its own Rules of Practice doesn't apply to the determination of whether Jones "practiced [accounting] before the Commission," even though the Commission admits that Rule 102(f) defines "practicing [accounting] before the Commission."[2]   Instead, the Commission bases its entire case on the language of the Bar Order itself, language it neglects to identify.  Turning to the precise language of the Bar Order, Ex. "B" to Jones's Supporting Memo, the Bar Order provides in pertinent part:

III.

> Based on the foregoing, the Commission finds it appropriate and in the public interest to accept the Offer of Jones and impose the sanctions consented to therein.  Accordingly, IT IS HEREBY ORDERED that, effective immediately,
>
> 1. Jones is denied the privilege of appearing or practicing before the Commission as an accountant.
>
> 2. After 3 years from the effective date of this order, Jones may request that the Commission consider his reinstatement by submitting an application (attention: Office of the Chief Accountant) to resume appearing or practicing before the Commission as:
>
> a) preparer or reviewer, or a person responsible for the preparation or review, of any public company's financial statements that are filed with the Commission.  Such an application must satisfy the Commission that Jones's work in his practice before the Commission will be reviewed either by the independent audit committee of the public company for which he works or in some other acceptable

---

[2] *See* Statement of Undisputed Fact No. 7, Jones's Supporting Memorandum; *see also* Ex. "C" to Jones Memo (containing the full text of the Rule).  Rule 102(f) is also cited in full below.

3

> manner, as long as he practices before the
> Commission in this capacity; . . .

Paragraph 1 above plainly states that Jones is "denied the privilege of appearing or practicing before the Commission as an accountant."[3] This language clearly demonstrates that Jones is barred from "practicing [accounting] before the Commission." Therefore, in order to determine if Jones was in fact "practicing [accounting] before the Commission" over the last 13 years in violation of Section III, ¶ 1 of the Bar Order quoted above, we need to turn to the SEC's own definition of "practicing [accounting] before the Commission." This is because there is nothing in the Bar Order itself which tells us what "practicing [accounting] before the Commission" is or means. Rule 102 of the Commission's Rules of Practice specifically defines "practicing [accounting] before the Commission" as

> (f) *Practice defined.* For purposes of these Rules of Practice, practicing before the Commission shall include but not be limited to
>
> (1) transacting any business with the Commission; *and*
>
> (2) the preparation of any statement, opinion or other paper by any attorney, accountant, engineer or other professional or expert, filed with the Commission in any registration statement, notification, application, report or other document with the consent of such attorney accountant, engineer, or other professional or expert. [*Emphasis in italics added.*][4]

---

[3] Paragraph 2(a) provides that if he chooses to act in the future as a "preparer or reviewer," he can apply to the Commission for that privilege within 3 years and the Commission will need to be satisfied that his work in that capacity will be properly overseen. The problem here is that based on SOX, which was enacted a year after the Bar Order and which designates those persons responsible for financial statements, Jones's work automatically, by law, was "reviewed" by the issuer's audit committee or another "acceptable" person. This only underscores the fact that SOX renders the Bar Order moot and unenforceable as to mere "preparers" of draft financial statements. *See* Reply Point VI below.

[4] *See* Exhibit "C" to Jones's Motion and Supporting Memo, a copy of Rule 102(f) as in effect since 2006.

The language "practicing before the Commission *shall include but not be limited to*" plainly means that the acts comprising subparagraphs (1) and (2) above must, at a minimum, be *included* in any determination that a person is "practicing [accounting] before the Commission." Contrary to the Opposition, it could not mean anything else. If it did, Rule 102(f) would mean nothing. "Practicing [accounting] before the Commission" would then mean whatever a Commission staffer or the Denver Office of the SEC wants it to mean. Accordingly, all discussion in the Opposition arguing that reference must be had to the Bar Order itself to determine that Jones violated it is untenable and irrational. It is remarkable to think that this case would boil down to the Commission's own scathing denial and repudiation of its very own Rule promulgated to define what is precisely at stake in this case.[5]   Based on the foregoing, Rule 102(f) controls this action and the Court should so rule.

**Reply Point II—SEVERAL EVIDENTIARY DEFECTS IN THE OPPOSITION**

**FAIL TO CREATE A GENUINE ISSUE OF MATERIAL FACT.**

A.   **The Commission cannot prove its case or dispute facts by the use of a "dump truck" presentation of "evidence," including the use of unauthenticated documents it fails to tie into Rule 102(f).** In its Exhibit 4, which summarizes Exhibits 4a Part 1, 4a Part 2 and 4a Part 3, which together include some-1,000 pages of documents, the Commission claims this unauthenticated avalanche of documents dumped in our laps somehow demonstrates a case against Jones—if we will only take the time to sift through it all. These unauthenticated 1,000 pages at best show that Jones did indeed participate in the "preparation" of draft financial statements of public companies—something he has admitted all along and something any person on earth, even a person with no training or education, is free to do. In *SEC v. Glass Marine Industries, Inc.*, 194 F. Supp. 879, 884-85; 1961 U.S. Dist. LEXIS 5836, at **11-12 (DC Del.

---

[5] Even more remarkably, on p. 1 of the Commission's Opposition, the Commission actually refers to Rule 102(f) as "*his*"—meaning Jones's—definition of "practicing before the Commission," all as if he and he alone made up the Rule. This Rule is apparently the "fabricated definition" and "sham paradigm" that the Commission accuses Jones and his counsel of "creating."

1961), the U.S. District Court for the District of Delaware, while denying the defendant's blanket objection to the Plaintiff SEC's "dump truck" presentation of evidence, a presentation including 260 exhibits and 4,700 pages of deposition testimony, nonetheless refused to admit the evidence because of the Commission's use of the "dump truck" method of trial practice.[6]   The Court further held that it would not determine the admissibility of the evidence until the Commission specified why it sought to introduce the same.  *Id.*  Here, it is not clear what the myriad 1,000 pages of unauthenticated exhibits comprising Exhibit 4 evidence in light of Rule 102(f) or how the Commission will get them into evidence at trial when they were not obtained in this action.[7]   For these reasons, the Court should strike, ignore or disallow Exhibit 4 and its 3 subparts.  Rule 56(e); *see also* Jones's corollary Motion to Strike.  If nothing else, Exhibits 4, 4a, 4b and 4c, are insufficient to show that Jones, individually, violated Rule 102(f).

   **B.**   **Investigative testimony from third parties is hearsay, denies Jones the right to cross-examine such witnesses, and is inadmissible to defeat Jones's motion under Rule 56(c)(2).  Such extensive testimony goes beyond a sworn statement on the nature of an affidavit.  For this reason, all such testimony should be stricken.**  Rule 56(c)(2) titled *Objection That A Fact is Not Supported by Admissible Evidence*, provides:  "A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."  Commission Exhibit 5 purports to summarize "evidence" that Jones "transacted business with the Commission" by regurgitating myriad excerpts from Exhibits 5a,

---

[6] In the Tenth Circuit, *see Coleman v. Blue Cross Blue Shield of Kansas, Inc.*, 287 Fed. Appx. 631, 635; 2008 U.S. App. LEXIS 14352, at **9 (10th Cir. 2008) ("It is not a court's responsibility to conduct a fishing expedition of a plaintiff's affidavit or any other record evidence in order to support the assertions made in her response to a summary judgment motion.").

[7] *See Martinez v. U.S. Department of Energy*, 170 Fed. Appx. 517; 2006 U.S. App. LEXIS 3102 (10th Cir. 2006) (documents attached to affidavit not properly authenticated and therefore not admissible to defeat summary judgment); *Pastran v. K-Mart Corp.*, 210 F.3d 1201, 1203 n. 1 (10th Cir. 2000) ("When reviewing an order granting summary judgment, we may only consider admissible evidence.  Although the evidence need not be in a form that would be admissible at trial, the content or substance of the evidence must be admissible.).  The documents comprising Exhibit 4 are not authenticated, much less by an affidavit.  *See also Fed. R. Evid. 901* titled *Authenticating or Identifying Evidence* which requires that the proponent of the evidence produce evidence of some kind to support a finding that the item is what the proponent claims it is.  The Commission has not done this with Exhibit 4 and its 3 subparts.

5b and 5c, each of which are full investigative deposition testimony transcripts from third parties, namely, the testimony of Keith Elison, Bradley Gibb and Nick Jones. Jones had no opportunity to cross-examine such persons and clarify their speculative and ambiguous testimony. None was qualified to testify as a designated corporate person on behalf of J&J Consultants LLC, under Rule 30(b)(6), *Fed. R. Civ. Pro.* These persons have all been available to testify at a deposition taken in *this* matter but the Commission has not bothered to take their depositions in a setting where Jones can cross-examine and correct the investigative record. At the same time, the date for fact discovery completion has passed.[8]

In *Wills v. Mr. Good-Rents, Inc.*, 1988 U.S. Dist. LEXIS 10013, at *23-24 (DC Kan. August 26, 1998), the court, in assessing whether the plaintiffs had presented sufficient evidence to avoid summary judgment on their claim that defendant committed a wrong, held that it may consider only such evidence as would be admissible at trial.[9] Thus, evidence inadmissible at trial, such as hearsay evidence, cannot be used to avoid summary judgment. *Martin v. John W. Stone Oil Distributor, Inc.,* 819 F.2d 547, 549 (5th Cir. 1987); *Johnson v. Chilcott*, 658 F. Supp. 1213, 1218; 1987 U.S. Dist. LEXIS 2642, at **10 (DC Colo. April 3, 1987). While courts hold that investigative testimony can be the equivalent of a sworn statement on the nature of an affidavit, entire deposition transcripts are not. Moreover, if Keith Elison, Nick Jones and Bradley Gibbs are not available for trial, any investigatory testimony represented by Exhibits 5a, 5b and 5c will be inadmissible hearsay. These investigative depositions, which are hearsay and being offered in violation of Jones's due process rights, should be stricken.

C.     **J&J Consultants, LLC's deposition has not been taken under Rule 30(b)(6), *Fed. R. Civ. Pro.*, and therefore, the Commission has no basis to dispute a fact on account of**

---

[8] Jones also hasn't waived a hearsay objection by consenting to the use of affidavits, declarations, excerpts of sworn depositions or investigative testimony, and documentary evidence without regard to the standard for judgment contained in Rule 56(c), *Fed. R. Civ. Pro.*; *see Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242-249-50, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

[9] *See SEC v. American Commodity Exchange*, 546 F.2d 1361, 1361 (10th Cir. 1976).

**anything J&J purportedly testified to.  It didn't testify to anything.  Exhibit 6 is thus speculative and lacking in foundation and should therefore be stricken.**  Rule 56(c)(4) titled *Affidavits or Declarations*, provides: "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Exhibit 6 summarizes various deposition testimonies and exhibits obtained in the Commission's investigation of this matter relating to J&J Consultants, LLC ("J&J"), all of which purport to evidence that Jones *individually* violated the Bar Order.  All of this consists of alleged "admissions" of J&J through people never authorized to testify on its behalf.  Exhibit 6 is thus a hodgepodge of argle-bargle designed to try and get at Jones through J&J—to do indirectly what can't be done directly.  For example, without having taken a corporate deposition in the investigatory phase or otherwise under Rule 30(b)(6), *Fed. R. Civ. Pro.*, the Commission uses the guesswork and speculation contained in Exhibit 6 to demonstrate that (1) Jones was the "relationship partners" for J&J clients; (2) that Jones controlled J&J's relevant work product; (3) that Jones took draws as opposed to salary (which is what employees often do in limited liability companies); and (4) that Jones was the only CPA at J&J (a fact which is irrelevant under SOX for a "preparer").  Aside from the fact that none of this relates to what the Commission must prove under Rule 102(f), this testimony was not obtained in a corporate deposition and therefore, it is not admissible now or at trial as against J&J and thus, by implication, Jones.  In *Eisenstadt v. Centel Corp.*, 113 F.3d 738, 742 (7th Cir. 1997), the Seventh Circuit Court held that affidavits may be admissible at summary judgment "provided, of course, that the affiant's or deponent's testimony would be admissible if he were testifying live."  There is no evidence that all these individuals would be designated as corporate deponents if J&J were noticed up for a Rule 30(b)(6) deposition, which it never was.  Exhibit 6 should be stricken, along with the Commission's legal conclusions about Jones acting in various legal and other capacities on

behalf of J&J.[10]   Based on the foregoing, Exhibits 5a, 5b and 5c should be stricken, along with

Exhibit 5 which seeks to summarize them.

### Reply Point III—THE COMMISSION FAILS TO "CONTROVERT" JONES'S SUPPORTING AFFIDAVIT WITH DIRECT, ADMISSIBLE EVIDENCE AND THEREFORE, ITS AVERMENTS ARE DEEMED ADMITTED UNDER DUCivR 56-1(c).

The Commission's Opposition fails to directly "controvert" any averment in Jones's

Supporting Affidavit, not to mention his averment that *he* personally and individually never

"transacted business with the Commission." It also fails to rebut his averment that, after his Bar

Order, no final reviewed or audited financial statement, a draft of which he may have initially

prepared, was ever filed by an issuer on EDGAR "with his consent." This makes sense because

if Jones isn't a SOX-designated person responsible for signing off on and approving final

financial statements for filing on EDGAR, his "consent" is unnecessary. Oddly, the Commission

doesn't even dignify his Supporting Affidavit with a mention. DUCivR 56-1, of the local rules,

titled **Contested Facts Declared in Summary Judgment Motion**, provides in pertinent part:

> . . . All material facts of record meeting
> the requirements of *Fed. R. Civ. P.* 56
> that are set forth with particularity in the
> statement of the movant will be deemed
> admitted for the purpose of summary
> judgment, unless specifically
> controverted by the statement of the
> opposing party identifying material facts
> of record meeting the requirements of
> *Fed. R. Civ. P.* 56.

Because the Commission has not only NOT bothered to directly controvert any statement

in Jones's Affidavit, let alone with admissible evidence, his averments are deemed admitted

under DUCivR-56-1. This virtually mandates granting his Motion for Summary Judgment.

---

[10] *Avirgan v. Hull*, 932 F.2d 1572, 1577 (11th Cir. 1991) ("A nonmoving party, opposing a motion for summary judgment supported by affidavits cannot meet the burden of coming forth with relevant competent evidence by simply relying on legal conclusions or evidence which would be inadmissible at trial.").

**Reply Point IV—THE COMMISSION'S OPPOSITION ERRONEOUSLY ATTRIBUTES**

**CONDUCT OF J & J CONSULANTS TO JONES HIMSELF.  J & J CONSULTANTS,**

**INCLUDING ANY EMPLOYEE OF J&J, CAN LAWFULLY "PREPARE" DRAFT**

**FINANCIAL STATEMENTS FOR AUDIT, REVIEW, AND APPROVAL BY SOX-**

**DESIGNATED PEOPLE WHO "CONSENT" TO AND ARE RESPONSIBLE FOR THE**

**SAME.  THE COMMISSION'S OPPOSITION ALSO FALSELY PRESUMES THAT**

**JONES IS J&J'S ALTER EGO.**

The Commission's "evidence" against Jones through J&J is speculative conjecture

because it is not based on a corporate deposition of J&J under Rule 30(b)(6).  Moreover, the

conclusions it draws are based on the alter ego doctrine, a theory of liability that isn't even

alleged in the Complaint, much less proven by any Exhibits.  *NLRB v. Greater Kansas City*

*Roofing*, 2 F.3d 1047, 1052 (10th Cir. 1993).[11]   Because there is no basis to draw conclusions

about Jones, individually, on the basis of speculative legal conclusions drawn about J&J, the

Commission's allegations attributing conduct of J&J to Jones individually have no merit and

cannot operate to defeat Jones's summary judgment motion.

**Reply Point V—THE COMMISSION'S DESPERATE EFFORT TO IGNORE ITS OWN**

**RULE 102(f), FURTHER IGNORING SOX AND ITS LAWFUL REQUIREMENT**

**THAT "PREPARERS" BE SEPARATE AND DISTINCT FROM "AUDITORS,"**

**DOES <u>NOT</u> DEFEAT JONES'S MOTION.**

A.      <u>The Commission has produced no admissible evidence that Jones</u>

<u>individually "transacted business with the Commission."</u>  The Commission has produced no

evidence that Jones, individually and directly, any more than tax preparers in *Loving v. IRS*, had

a direct relationship with the Commission or that Jones was a lawful agent or legal representative

of J&J clients.  While the Commission argues that Jones did so through J&J, they ignore that

---

[11] The alter ego doctrine permits piercing the corporate veil where the stockholder and corporation have not maintained separate identities and "adherence to the corporate fiction [would] sanction a fraud, promote injustice, or lead to evasion of legal obligations." *Id.*

everyone at J&J had the right under SOX to "prepare" draft financial statements for public companies, financial statements that would then be subject to all the SOX statutory safeguards, specifically, being signed off on by specific individuals statutorily *responsible* therefor under SOX. *See* note 12 below. Such a person was never Jones. And the Bar Order does not prevent J&J, or employees acting on its behalf, from "transacting business with the Commission," particularly after the enactment of SOX.

> B.   **The Commission fails to identify or define what "prepare" means in this case, thereby refusing to divulge its own regulatory limits**. What percentage of a final and SOX-approved financial statement filed on EDGAR must Jones have initially drafted or "prepared"? Why won't the Commission tell us? Do they know? And how will the Commission prove Jones's percentage "preparation" contribution to each final financial statement filed by a J&J issuer/client on EDGAR over the last 13 years? This insurmountable proof problem now that fact discovery is closed and when no documents exist to reach such a number means that no reasonable juror could find in the Commission's favor. For this reason alone, Jones's motion should be granted.

> C.   **The Commission has produced no admissible evidence that an EDGAR-filed public company financial statement, a draft of which Jones may have initially "prepared" or worked on, was filed on EDGAR "with [Jones's] consent," all as Rule 102(f) requires. They have further produced no evidence that the "filed with consent" requirement of Rule 102(f) is satisfied solely if a person participated in the "preparation" of an initial draft public company financial statement.** In Argument C, iii, IB, pp. 28-34, Comm. Opp., the Commission makes various arguments that it has satisfied the "consent" requirement of Rule 102(f). If anything, these jumbled arguments show that "consent" is not something that can be assumed because it is convenient. The Commission has failed to produce admissible evidence showing that Jones actually "consented" to the filing of a document on Edgar, the financial statements of which he allegedly initially prepared or worked on in some fashion. Jones attests

11

in his unrebutted Supporting Affidavit that he did not give his consent or "go ahead" to have any final financial statement he allegedly initially drafted filed on EDGAR. This makes sense after SOX. After July 2002, it wasn't up to a mere preparer to cause something to be filed on EDGAR and the Commission lacks one shred of evidence to such effect. "Consent" to file something with the SEC under Rule 102(f) is a word that stands on its own or it wouldn't be separately set forth in the Rule. But the Commission ignores the plain meaning of the word in its entire Opposition. It also fails to rebut Jones's Regulation S-K, Item 601 argument in his Supporting Memorandum that accounting and lawyer-related consents all must be in writing and themselves filed on EDGAR as an Exhibit 23. While the Commission cites the *Prince* case, 942 F. Supp. 2d 108 (D of DC 2013), Prince was basically a one-man operation and it has no factual similarity to the case at bar. One cannot logically assume that simply because a person participates in the "preparation" of something that he necessarily "consented" to the filing of the final version with the Commission, a final product over which he had no control or say-so under SOX and which he may not have even seen. Because of the Commission's abject failure to prove that Jones ever gave his specific "consent" to file a final audited or reviewed financial statement on EDGAR, Jones's motion should be granted.

**Reply Point VI—AFTER SOX, THE COMMISSION HAS NO RATIONAL BASIS OR LEGITIMATE REASON OR PURPOSE TO REGULATE MERE "PREPARERS" OF FINANCIAL STATEMENTS, PERSONS LIKE JONES WHO, UNDER SOX, ARE NOT LEGALLY RESPONSIBLE THEREFOR. FOR THIS REASON, THE BAR ORDER IS MOOT AND UNENFORCEABLE. BASED ON *LOVING V. IRS*, THIS ACTION SHOULD THEREFORE BE DISMISSED.**

As stated above, the Bar Order was imposed before the enactment of SOX in July 2002. After SOX, barring Jones from merely "preparing" a financial statement is regulatory overreach and makes no sense. After SOX, which mandates bifurcation of accounting roles for those preparing and compiling public company financial statements, no legitimate regulatory purpose

is served in regulating mere "preparers" of draft financial statements like Jones, that is, persons not ultimately *responsible*, statutorily, for the same when filed on EDGAR.

This is further confirmed by the logic and reasoning of the recent landmark DC Court of Appeal decision, *Loving v. IRS*, 742 F.3d 1013; 2014 U.S. App. LEXIS 2512 (DC Cir. February 11, 2014), a copy of which is attached as Exhibit "F" to Jones's Motion and Supporting Memo. Therein, the Court of Appeals for the District of Columbia recently held that the IRS has no authority, Congressional or administrative, to regulate 600,000 to 700,000 federal income tax return preparers, in part, because such persons have no relationship with or to the IRS directly, nor do they "represent" anyone that the IRS regulates, nor are they "agents" of the person filing the tax return. Similarly, the Commission can make no case that any reason or basis exists to regulate a mere "preparer" of public company financial statements after SOX, persons who, after SOX need not be accountants or have any credentials or training whatsoever. Based on the statutory safeguards built into SOX, namely, requiring the auditor to "review" quarterly financial information, that the auditor "audit" annual financial information, and requiring the CFO and CEO to sign off on the same for the issuer, nothing is served by continuing to regulate a paraprofessional like Jones after SOX.[12]

## CONCLUSION

The Commission strangely devotes the large majority of a 37-page Opposition to the proposition that a Commission staff attorney can prepare a Bar Order 13 years ago that forever trumps the SEC's own Rules of Practice and SOX. The Commission's pretense that SOX, not to

---

[12] *See* the following relevant sections of the Sarbanes-Oxley Act of 2001, a full copy of which is attached hereto as **Exhibit "A"**: Section 201(a) titled **Services Outside the Scope of the Practice of Auditors**, § 301(2) titled **Responsibilities Relating to Registered Public Accounting Firms**, § 302 titled **Corporate Responsibility for Financial Reports**, § 401(a)(i) titled **Accuracy of Financial Reports**, § 404 titled **Management Assessment of Internal Controls**, § 407 titled **Disclosure of Audit Committee Financial Expert**, § 602 titled **Appearance and Practice Before the Commission**, paragraph (b) of which restricts the same to "registered public accounting firms and associated persons," a category NOT including Jones.

mention its own Rules of Practice, have no bearing on this case is difficult to believe, let alone understand.

The Commission's burden in this case is to show that Jones violated Rule 102(f), not that he engaged in action verbs in a bar order. The fact of the matter is that based on SOX, there is no legitimate or rational regulatory purpose in regulating "preparers" of draft financial statements any more than the IRS has a legitimate purpose or interest in regulating 600,000 or 700,000 income tax return preparers after *Loving v. IRS*, 742 F.3d 1013; 2014 U.S. App. LEXIS 2512 (DC Cir., February 11, 2014). ***"Preparers" of draft financial statements need not be regulated by the Commission because, under SOX, they aren't legally or statutorily <u>responsible</u> for the final product that is filed with the Commission. Other persons are.***

The Commission has failed to produce admissible evidence that Jones, as opposed to the entity for whom he was employed and worked, "transacted business with the Commission." A person not legally *responsible* for a final document after SOX is not a person who, by definition, *can* "transact business with the Commission." Nor should such person even be regulated at all.

The Commission makes no effort to define the extent of a person's participation in "preparing" a draft financial statement that brings that person within the ambit or reach of Rule 102(f), particularly after SOX. The Commission also fails to produce admissible evidence that Jones singlehandedly "prepared" a financial statement, the final product of which was ultimately filed with the Commission "with his consent." The Commission has further failed to show why it has a legitimate regulatory interest in regulating mere "in-house" "preparers" of draft financial statements when specific individuals employed by an issuer, including independent and outside auditors, not only sign off on the final financial statements but cause the final product to be filed on Edgar.

Finally, at a minimum and other than torturing obvious guesswork made by Jones at his investigatory deposition into an admission, the Commission should explain to the Court how on

earth it intends to present disgorgement evidence at any trial of this matter when no records exist

or are available to show what percentage of Jones's personal income was made over the last 13

years "preparing" initial draft financial statements for public companies.

At most, Jones is a "paraprofessional" accountant, much like a paralegal in the legal

profession.  There is no reason for the government to regulate a paralegal as if he or she were a

lawyer just as there is no reason for the Commission to regulate a "preparer" of draft financial

statements as if he or she were a SOX-designated person responsible, by law, for the final

financial statement product filed on EDGAR.

DATED this 7th day of October, 2014.

Respectfully submitted,

MABEY & COOMBS, L.C.

/s/

J. Michael Coombs
*Attorneys for Defendant*

TAYLOR AND ASSOCIATES, INC.


/s/

Elliott N. Taylor
*Attorneys for Defendant*