Polly Atkinson, Esq.,
AtkinsonP@sec.gov
Mark L. Williams, Esq.,
WilliamsML@sec.gov
Securities and Exchange Commission
Byron G. Rogers Federal Building
1961 Stout Street
Suite 1700
Denver, CO  80294-1961
(303) 844-1000

Daniel J. Wadley, Esq., Utah Bar No. 10358
WadleyD@sec.gov
Securities and Exchange Commission
351 South West Temple, Suite 6.10
Salt Lake City, UT 84101
(801) 524-67488
(Local Counsel)

*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | | |
|---|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, Plaintiff, | * * * * * | BRIEF IN SUPPORT OF REQUEST FOR DISGORGEMENT |
| v. | * * | |
| R. GORDON JONES, C.P.A., Defendant. | * * * | Case No. 1:13-cv-00163-BSJ District Judge Bruce S. Jenkins |

**TABLE OF CONTENTS**

I.     INTRODUCTION ................................................................................. 1

II.    AUTHORITY FOR DISGORGEMENT .................................................. 2

       A.    District courts Have Authority to Order Equitable Relief ............................ 2

       B.    Disgorgement is Equitable Relief ................................................ 3

       C.    Disgorgement is an Established Remedy in Commission Cases .............. 4

       D.    Disgorgement is Appropriate in This Matter ................................. 8

             1.    Disgorgement for Violation of a Commission Order is an
                   Appropriate Remedy ...................................................... 8

             2.    Courts Have Authority to Order Disgorgement of
                   Compensation ............................................................. 8

             3.    Disgorgement is not Restricted to Cases Involving Fraud .............. 9

III.   NECESSITY OF DISGORGEMENT ...................................................... 10

       A.    Disgorgement is Necessary to Effectuate a Remedy .............................. 10

       B.    Disgorgement is Necessary to Deter Violations ...................................... 11

       C.    Disgorgement is Necessary to Benefit Investors ..................................... 12

       D.    Disgorgement is the Only Appropriate and Sufficient Remedy ............... 13

IV.    AMOUNT OF DISGORGEMENT ............................................................ 14

       A.    Methods for Calculating Disgorgement .................................................... 15

             1.    Method One – Jones' Testimony ........................................ 16

             2.    Method Two – QuickBooks Analysis ............................. 17

                   a.    Assumptions to be Applied ................................. 17

                         i.     Which Clients are at Issue? ..................... 17

                         ii.    What Work is to be Included? ................. 18

                         iii.   Whether Taxes Should Be Deducted? .................... 19

                   b.    Method Used ....................................................... 20

B.    The Amount of Disgorgement ................................................... 21

    1.    Method One  21

    2.    Method Two  21

C.    Pre-Judgment Interest ........................................................... 21

V.    Conclusion ..................................................................... 22

## TABLE OF AUTHORITIES

*Atlas Life Ins. Co. v. W.I. Southern, Inc.,* 306 U.S. 563 (1939)..........................................4

*Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340 (1998) ................................3

*First City Financial Corp. Ltd*, 890 F.2d 1215 (D.C. Cir. 1989) .................. 6, 9, 12, 14, 15

*Ins. Co. v. Mast Constr. Co.*, 159 F.3d 1311 (10th Cir.1998) ....................................4, 11

*J. I. Case Co. v. Borak*, 377 U.S. 426 (1964) .............................................................6, 11

*Mills v. Electric Auto-Lite Co.*, 396 U.S. 375 (1970) ..............................................6, 7, 11

*Porter v. Warner Holding Co.,* 328 U.S. 395, (1946) .......................................................6

*SEC v. Antar,* 831 F. Supp. 380 (D.N.J. 1993)...............................................................11

*SEC v. Barraco*, 438 F.2d 97 (10th Cir. 1971)..................................................................3

*SEC v. Blavin,* 760 F.2d 706 (6th Cir.1985) ............................................................6, 8, 9

*SEC v. Capital Monthly Income Fund, LP*, 28 F. Supp. 3d 887 (D. Minn. 2014) .............8

*SEC v. Cavanagh*, 445 F.3d 105 (2d Cir. 2006)................................................3, 4, 9, 12

*SEC v. Commonwealth Chem. Sec., Inc.,* 574 F.2d 90 (2d Cir. 1978)............................3

*SEC v. Curshen*, 2010 WL 1444910 (10th Cir. April 13, 2010) .......................................7

*SEC v. DiBella*, 409 F. Supp. 2d 122 (D. Conn. 2006)....................................................7

*SEC v. DiBella,* No. 2008 WL 6965807 (D. Conn. Mar.13, 2008),
*aff'd,* 587 F.3d 553 (2d Cir. 2009)...................................................................................19

*SEC v. Druffner*, 802 F. Supp. 2d 293 (D. Mass. 2011) .................................................9

*SEC v. First City Financial Corp. Ltd*, 890 F.2d 1215 (D.C. Cir. 1989)...... 6, 9, 12, 14, 15

*SEC v. First Jersey Sec. Inc.,* 101 F.3d 1450 (2d Cir. 1996)........................................15

*SEC v. Fox*, 2013 WL 3746173 (10th Cir. July 18, 2013)................................................7

*SEC v. Friendly Power Co, LLC*, 49 F. Supp. 2d 1363 (S.D. Fla. 1999).......................10

*SEC v. Gordon*, 2013 WL 1632696 (10th Cir. Apr. 17, 2013)..........................................7

*SEC v. Graham*, 21 F. Supp. 3d 1300 (S.D. Fla. 2014)...................................................*3*

*SEC v. Hughes Capital Corp.*, 917 F. Supp. 1080 (D. N.J. 1996),
*aff'd* 124 F.3d 449 (3d Cir. 1997).....................................................................................15

*SEC v. Inorganic Recycling Corp.,* 2002 WL 1968341 (S.D.N.Y. August 23, 2002)......15

*SEC v. JT Wallenbrock & Assoc.*, 440 F.3d 1109 (9th Cir. 2006...................................... 15

*SEC v. Kenton Capital Ltd.*, 69 F. Supp. 2d 1 (D. D.C. 1998)............................................ 15

*SEC v. Koenig,* 532 F. Supp. 2d 987 (N.D. Ill. 2007),
*aff'd in relevant part & remanded,* 557 F.3d 736 (7th Cir. 2009).................................... 19

*SEC v. Los Angeles Trust Deed & Mortgage Exchange*, 186 F. Supp. 830
(S.D. Cal. 1960) ..................................................................................................................... 2

*SEC v. M&A West, Inc.*, 538 F.3d 1043 (9th Cir. 2008)................................................... 9

*SEC v. Manor Nursing Centers, Inc.*, 458 F.2d 1082 (2d Cir. 1972) ..... 4, 5, 6, 10, 12, 21

*SEC v. Martino*, 255 F. Supp. 2d 268 (S.D.N.Y. 2003)................................................... 8

*SEC v. Materia,* 745 F.2d 197 (2d Cir. 1984) ............................................................... 11

*SEC v. Maxxon, Inc.*, 465 F.3d 1174 (10th Cir. 2006)................................................. 3, 7

*SEC v. Merchant Capital, LLC*, 2009 WL 294751 (11th Cir. February 9, 2009) ............. 9

*SEC v. Merchant Capital, LLC*, 2012 WL 3205543 (11th Cir. August 7, 2012) .............. 9

*SEC v. Olins,* 762 F. Supp. 2d 1193 (2011) ................................................................... 9

*SEC v. Patel*, 61 F.3d 137 (2d Cir. 1995) ...................................................................... *15*

*SEC v. Petrofunds, Inc.,* 420 F. Supp. 958 (S.D.N.Y.1976) ........................................... 4

*SEC v. R.J. Allen & Associates, Inc.*, 386 F. Supp. 866 (S.D. Fla. 1974)........................ 4

*SEC v. Razmilovic,* 822 F. Supp. 2d 234 (E.D.N.Y. 2011),
*aff'd in relevant part, vacated in part, remanded,* 738 F.3d 14 (2d Cir. 2013) .............. 19

*SEC v. Sierra Brokerage Service*, 712 F.3d 231 (6th Cir. 2013) .................................... 9

*SEC v. Smart*, 678 F.3d 850 (10th Cir. 2012).................................................................. 7

*SEC v. Svoboda,* 409 F. Supp. 2d 331 (S.D.N.Y. 2006) ................................................. 19

*SEC v. Taber*, 2013 WL 6335375 (S.D.N.Y. Dec. 4, 2013) ............................................ 8

*SEC v. Telsey*, 1991 WL 72854 (S.D.N.Y. Mar. 13, 1991) ......................................... 5, 8

*SEC v. Texas Gulf Sulphur Co.*, 312 F. Supp. 77 (S.D.N.Y.1970)
aff'd 446 F.2d 1301 (2d Cir. 1971), cert. denied 404 U.S. 1005 (1971)......................... 4

*SEC v. Texas Gulf Sulphur Co.*, 446 F.2d 1301 (2d Cir. 1971) ............................. 4, 5, 11

*SEC v. Tome,* 833 F.2d 1086 (2d Cir.1987), *cert. denied,* 108 S. Ct. 1751, (1988) ........ 6

*SEC v. U.S. Pension Trust Corp.,* 2011 WL 5061730 (11th Cir. Oct. 26, 2011)........... 19

*SEC v. Wolfson*, 2007 WL 2807741 (10th Cir. Sept. 25, 2007)......................................... 7

*SEC v. World Gambling Corp.,* 555 F. Supp. 930 (S.D.N.Y.1983) ........................... 6, 19

*SEC v. Zwick,* 2007 WL 831812 (S.D.N.Y. Mar.16, 2007),
*aff'd,* 317 F. App'x 34 (2d Cir. 2008)................................................................................ 19

*Smith v. SEC,* 653 F.3d 121 (2d Cir. 2011) .................................................................... 2

*Tull v. United States*, 481 U.S. 412 (1987) ...................................................................... 3

<u>Statutes</u>

S. Rep. 101-337 (1990)

H. Rep. 101-616 (1990)................................................................................................... 7

1 Stat. 73, 78 (1789); U.S. Const. art. III, § 1 ................................................................ 4

15 U.S.C. § 78u(d)(5) ................................................................................................ 3, 12

15 U.S.C. § 78u(e) ........................................................................................................... 3

15 U.S.C. § 78d-3 ........................................................................................................... 13

17 C.F.R. § 201.102 ...................................................................................................... 13

On September 30, 2015, the Court issued a decision finding that R. Gordon Jones practiced accounting before the Securities and Exchange Commission in violation of an Order of the Commission prohibiting him from doing so.  Order, Docket No. 107.  The Court ordered Jones to obey the Order of the Commission.  *Id*.  The Court reserved on the issue of disgorgement and asked for further briefing and argument on the authority, the method, and the amount of an appropriate remedy.  *Id*.

In order to make this Court's Order meaningful, make Jones' violation of the Commission's Order unprofitable, and deter others from violating similar Commission orders, the Court should order Jones to disgorge the funds he procured through his violations of the Commission Order.  There is clear authority authorizing the Court to do so and providing ample justification for such an order.  There is also abundant evidence concerning Jones' gains from his violations.

I.   <u>INTRODUCTION</u>

In 2001, Mr. Jones consented to a Commission Order prohibiting him from appearing or practicing before the Securities and Exchange Commission as an accountant.  As the Court found, Mr. Jones "did in fact engage in conduct prohibited and thereby violative of the Jones Bar Order, including (i) creating, compiling, or editing information incorporated into filings with the Commission, (ii) making non-quantitative accounting decisions, (iii) drafting responses to SEC comment letters, and (iv) managing others involved in the preparation of materials filed with the SEC."  Order, Docket No. 107 at 12-13.

The remaining question is whether or not Jones should be permitted to retain and enjoy the money he obtained by violating the Commission's Order.  He should not.  As an initial matter, this Court has unquestionable authority to order the equitable remedy

of disgorgement.  The Court should reject Jones' argument that one can profit through violations of a bar order while the Commission, and this Court, are powerless to separate him from those ill-gotten gains.

Here, disgorgement is appropriate for several reasons.  First, disgorgement is the most meaningful remedy remaining in this action.  That is because Jones profited from conduct in which he was ordered not to engage.  Only disgorgement will ensure Jones does not enjoy the profits obtained from violating his bar order.  Moreover, the Court should order disgorgement to deter similarly barred individuals (many of whom pose a real threat to the security of our markets) from violating their bar order and to ensure that those individuals do not have a financial incentive to engage in prohibited conduct.

As more fully outlined below, the Commission has put forth extremely conservative estimates of disgorgement, as it is only seeking disgorgement from 2008 forward.  Moreover, the Commission has put forth several different ways (all of them proper) to obtain a disgorgement figure.  Each figure represents real monies that Mr. Jones obtained only through violating his bar order, monies that he should not be permitted to retain and enjoy.

II.  AUTHORITY FOR DISGORGEMENT

   A.  <u>District Courts Have Authority to Order Equitable Relief.</u>

Since, at least, 1960, federal courts have recognized that, as a court of equity, the district court has jurisdiction under the Securities Exchange Act of 1934 ("Exchange Act") to "mold its decree to meet the exigencies of the situation before it."  *SEC v. Los Angeles Trust Deed & Mortgage Exchange*, 186 F. Supp. 830, 890 (S.D. Cal. 1960).  Circuit courts have reaffirmed that district courts enjoy "general equity powers" under the Exchange Act.  *See, e.g., Smith v. SEC,* 653 F.3d 121, 127 (2d Cir. 2011).  In

addition to these general equity powers, district courts are also specifically authorized to grant *any* equitable relief appropriate for the benefit of investors.  *See* Section 21(d)(5) of the Exchange Act, 15 U.S.C. § 78u(d)(5).

B.  Disgorgement is Equitable Relief.[1]

First, the controlling law of this circuit is that disgorgement is an equitable remedy.  "Disgorgement is by nature an equitable remedy…."  *SEC v. Maxxon, Inc.*, 465 F.3d 1174, 1179 (10th Cir. 2006); *see also Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 352 (1998) (disgorgement of improper profits is equitable monetary relief); *Tull v. United States*, 481 U.S. 412, 424 (1987) (disgorgement of improper profits is traditionally considered an equitable remedy).  In considering Section 21(e) of the Exchange Act, 15 U.S.C. § 78u(e), the Tenth Circuit noted that "the full scope of [the court's jurisdiction in equity] is to be recognized and applied."  *SEC v. Barraco*, 438 F.2d 97, 99 (10th Cir. 1971).

In addition, in *SEC v. Cavanagh*, 445 F.3d 105 (2d Cir. 2006), the Second Circuit undertook an extensive analysis of the equitable underpinnings of disgorgement and found that disgorgement was an historical equitable remedy that currently resided within the powers of federal district courts.

The Second Circuit began by noting that "the primary purpose of disgorgement is not to compensate investors.  Unlike damages, it is a method of forcing a defendant to give up the amount by which he was unjustly enriched." *Cavanagh*, 445 F.3d at 116 (citing *SEC v. Commonwealth Chem. Sec., Inc.,* 574 F.2d 90, 102 (2d Cir. 1978)).  Instead, the primary purpose is to prevent wrongdoers from unjustly enriching

---

[1] Even *SEC v. Graham*, 21 F. Supp. 3d 1300, 1310 (S.D. Fla. 2014), recognized that the remedies at issues were equitable remedies.  *Graham*, which found the Commission's disgorgement claim subject to a five year statute of limitations, has been rejected by every court which has considered it.

themselves through violations, which has the effect of deterring subsequent violations. *Cavanagh*, 445 F.3d at 116.  This emphasis on public protection, as opposed to compensatory relief, illustrates the equitable nature of the remedy. *See id.; SEC v. Petrofunds, Inc.,* 420 F. Supp. 958, 960 (S.D.N.Y.1976).

The Second Circuit found that Section 11 of the Judiciary Act gave federal courts jurisdiction over "all suits ... in equity."  *Cavanagh*, 445 F.3d at 117, *citing* 1 Stat. 73, 78 (1789); U.S. Const. art. III, § 1.  The *equity* jurisdiction conferred on federal courts by the Constitution and the Judiciary Act "is an authority to administer in equity suits the principles of the system of judicial remedies which had been devised and was being administered by the English Court of Chancery at the time of the separation of the two countries."  *Id.* (citing *Atlas Life Ins. Co. v. W.I. Southern, Inc.,* 306 U.S. 563, 568 (1939)).  The Second Circuit, citing numerous examples, found that because the remedies available at chancery in 1789 included disgorgement and equity courts traditionally awarded disgorgement of ill-gotten assets, disgorgement[2] is an equitable remedy.  *Cavanagh*, 445 F.3d at 118.

C.  Disgorgement is an Established Remedy in Commission Cases.

"Disgorgement" is a term utilized in connection with Commission suits seeking to deprive defendants of the gains from their wrongful conduct as an ancillary remedy to fully effect the deterrent force that is essential to adequate enforcement of the federal securities laws.  *SEC v. R.J. Allen & Associates, Inc.*, 386 F. Supp. 866, 880 (S.D. Fla. 1974) (citing *SEC v. Manor Nursing Centers, Inc.*, 458 F.2d 1082, (2d Cir. 1972)); *SEC v. Texas Gulf Sulphur Co.*, 312 F. Supp. 77, 92 (S.D.N.Y.1970) aff'd 446 F.2d 1301 (2d

---

[2] Although the term "disgorgement" became common only recently, equity courts have traditionally awarded analogous forms of relief under a variety of names.  *Cavanagh*, 445 F.3d at 118.

Cir. 1971), cert. denied 404 U.S. 1005 (1971).  There is a long history of disgorgement in Commission cases.

The seminal case considering disgorgement is *SEC v. Texas Gulf Sulphur Co.*, 446 F.2d 1301 (2d Cir. 1971).  In *Texas Gulf Sulphur*, while the appellants acknowledged that the district court was given general equity powers under Section 27 of the Exchange Act, they contended that the Commission does not have authority under Section 21(e) of the Exchange Act to seek anything but injunctive relief, together with whatever ancillary relief is necessary to enforce an injunction, such as the appointment of a receiver.  *Texas Gulf Sulphur*, 446 F.2d at 1307.  They also argued that disgorgement was in essence a penalty because it was not intended to compensate those who were actually injured.  *Id.*  The Second Circuit held "we do not read Section 21(e) as restricting the remedies which the SEC can pursue to injunctive relief."  *Id.* ("There is little doubt that Section 27 of the Act confers general equity power upon the district courts" … "We cannot fairly infer from the Securities Exchange Act of 1934 a purpose to circumscribe the courts' power to grant appropriate remedies.").

In 1972, in *SEC v. Manor Nursing Centers, Inc.*, 458 F.2d 1082 (2d Cir. 1972), the Second Circuit again discussed the issue of disgorgement in Commission cases. The Second Circuit found that it was well established that Section 27 of the Exchange Act, conferred general equity powers upon the district courts.  *Manor Nursing*, 458 F.2d at 1103, *citing* Texas Gulf Sulphur, 446 F.2d at 1307.  Once the equity jurisdiction of the district court has been properly invoked by a showing of a securities law violation, the court possesses the necessary power to fashion an appropriate remedy.  *Id.*  Thus, while the Exchange Act did not specifically authorize the ancillary relief of disgorgement, "[i]t is for the federal courts to adjust their remedies so as to grant the necessary relief

5

where federally secured rights are invaded." *Id.*, (citing *J. I. Case Co. v. Borak*, 377 U.S. 426, 433 (1964); *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 391 (1970)).  The Second Circuit reiterated that the SEC may seek other than injunctive relief to effectuate the purposes of the federal securities laws.  *Manor Nursing*, 458 F.2d 1104.  The Second Circuit went on to emphasize the necessity for disgorgement saying, "[t]he effective enforcement of the federal securities laws requires that the SEC be able to make violations unprofitable.  The deterrent effect of an SEC enforcement action would be greatly undermined if securities law violators were not required to disgorge illicit profits." *Id.*

In 1989, in *SEC v. First City Financial Corp. Ltd*, 890 F.2d 1215 (D.C. Cir. 1989), the District Court for the District of Columbia rejected the argument that disgorgement is limited to fraud actions and upheld an order of disgorgement in a case brought alleging violations of Section 13(d) of the Exchange Act, a non-scienter, reporting provision.  The D.C. Circuit said that "[a]ppellants, by claiming that Congress did not explicitly authorize a monetary remedy for section 13(d) violations, misapprehend the source of the court's authority: disgorgement is an equitable remedy designed to deprive a wrongdoer of his unjust enrichment and to deter others from violating the securities laws." *First City Financial Corp.*, 890 F.2d at 1230 (citing *SEC v. Tome,* 833 F.2d 1086, 1096 (2d Cir.1987), *cert. denied,* 108 S. Ct. 1751, (1988); *SEC v. Blavin,* 760 F.2d 706, 713 (6th Cir.1985)). The D.C. Circuit noted that "[u]nless otherwise provided by statute, all the inherent equitable powers of the District Court are available for the proper and complete exercise of that jurisdiction," and so "[w]e see no indication in the language or the legislative history of the [Exchange] Act that even implies a restriction on the equitable remedies of the district courts.  *Id.* (citing *Porter v. Warner Holding Co.,* 328 U.S. 395,

6

398, (1946); *Mills,* 396 U.S. at 391)).  The Court concluded, "[d]isgorgement, then, is available simply because the relevant provisions of the Securities Exchange Act of 1934, sections 21(d) and (e), vest jurisdiction in the federal courts."  *Id*.

More recently, courts have had the opportunity to consider the practice of ordering disgorgement in Commission cases.  "Congress has made various amendments to the securities laws, including the Private Securities Litigation Reform Act (1995) and the Sarbanes-Oxley Act (2002), but has declined these opportunities to limit or eliminate the Commission's practice of seeking and obtaining orders of disgorgement."  *SEC v. DiBella*, 409 F. Supp. 2d 122, 131 (D. Conn. 2006).  The *DiBella* Court reviewed the text and legislative history of the various securities laws and found that it supported the continued recognition by the courts of the Commission's disgorgement authority.  *Id*.  For instance, when enacting the Securities Law Enforcement Remedies Act of 1990, Congress explicitly referred to SEC disgorgement actions and acknowledged the SEC's authority to seek disgorgement.  S. Rep. 101-337 (1990); H. Rep. 101-616 (1990).

Not surprisingly, the Tenth Circuit has recognized that disgorgement in SEC cases is appropriate.  *See*, *e.g.*, *Maxxon*, 465 F.3d 1174; *SEC v. Wolfson*, 2007 WL 2807741 (10th Cir. Sept. 25, 2007); *SEC v. Curshen*, 2010 WL 1444910 (10th Cir. April 13, 2010); *SEC v. Smart*, 678 F.3d 850(10th Cir. 2012); *SEC v. Gordon*, 2013 WL 1632696 (10th Cir. Apr. 17, 2013); *SEC v. Fox*, 2013 WL 3746173 (10th Cir. July 18, 2013).

D. Disgorgement is Appropriate in This Matter.

1. Disgorgement for Violation of a Commission Order is an Appropriate Remedy.

As an initial matter, Courts routinely order disgorgement for violations of Commission bar orders. *See*, *e.g.*, *SEC v. Taber*, 2013 WL 6335375, at *2 (S.D.N.Y. Dec. 4, 2013) (disgorgement for violation of a 102(e) bar order "reflects the large amount of money illicitly gained by Taber following the 2004 Order, [and] furthers the important goal of deterrence…."); *SEC v. Martino*, 255 F. Supp. 2d 268, 289 (S.D.N.Y. 2003) (In a case against a broker who had been barred by the Commission, the Court found that "Martino repeatedly engaged in her brokerage activities despite the fact that she was unregistered and had been barred from doing so in April of 1992.  Martino's repeated and flagrant violations of securities laws and Bar Order for more than three years more than amply demonstrate the Commission's entitlement to disgorgement"); *SEC v. Telsey*, 1991 WL 72854, at *2 (S.D.N.Y. Mar. 13, 1991) (ordering disgorgement for broker's violation of bar order).

2. Courts Have Authority to Order Disgorgement of Compensation.

In addition, those who practice in the securities area without proper authorization must disgorge the money they make from doing so.  For instance, an unregistered investment adviser was required to disgorge the fees paid by subscribers to his newsletter.  *SEC v. Blavin*, 760 F.2d 706, 713 (6th Cir. 1985) ("The district court was well within its equitable power 'to make violations unprofitable,' when it ordered Blavin to disgorge his subscription fees.").  Similarly, an investment adviser was required to disgorge unearned fees, even though the fees were paid outside the period of the fraud. *SEC v. Capital Monthly Income Fund, LP*, 28 F. Supp. 3d 887, 899 (D. Minn. 2014) ("[t]he simple question is whether the profits, fees, and other compensation derived from

wrongdoing.  Here, they were.  Absent wrongdoing, the funds would not have come to [the defendants].").  Commissions from violative activities are properly disgorgeable. *See SEC v. Druffner*, 802 F. Supp. 2d 293, 297 (D. Mass. 2011) ("Defendants' argument that they "have already paid a heavy price" is unpersuasive…. net commissions [are] a reasonable approximation of the amount of unjust enrichment.").  A good faith belief that the work was legitimately earned is irrelevant.  *SEC v. Olins,* 762 F. Supp. 2d 1193, 1197 (2011) (Defendant must prove that proceeds result from other than unlawful activity).  And defendants may be required to disgorge salaries.  *See SEC v. Merchant Capital, LLC,* 2012 WL 3205543 at **3 (11th Cir. August 7, 2012) ("The purpose of disgorgement is to deprive the wrongdoer of his ill-gotten gain, and there is no reason why salaries earned cannot be used to determine disgorgement.").

3.  Disgorgement is not Restricted to Cases Involving Fraud.

In its Order, the Court found "nothing in Rule 102(e) [ ] indicates scienter is relevant in establishing violations." Order, Docket No. 107 at 26.  Similarly, scienter is not an element of a disgorgement claim.  *SEC v. M&A West, Inc.*, 538 F.3d 1043 (9th Cir. 2008) (ordering disgorgement of proceeds from registration violations); *SEC v. Merchant Capital, LLC,* 2009 WL 294751 at **2 (11th Cir. February 9, 2009) ("Because these violations [of Section 5(a), 5(c), and 15(a) are strict-liability violations, the district court is instructed to order appropriate disgorgement ….).  For that reason, disgorgement is frequently ordered in non-fraud cases.  *See*, *e.g.*, *Blavin*, 760 F.2d 713 (Sixth Circuit - unregistered investment advisor required to disgorge fees received for advice); *First City Financial Corp.*, 890 F.2d at 1215 (D.C. Circuit - disgorgement of gains from violations of reporting provisions); *Cavanagh*, 445 F.3d at 110 (Second Circuit - disgorgement of gains from registration violations); *SEC v. Sierra Brokerage*

9

*Service*, 712 F.3d 231 (6th Cir. 2013) (disgorgement of gains from registration and reporting violations); *SEC v. Friendly Power Co, LLC*, (49 F. Supp. 2d 1363 (S.D. Fla. 1999) (disgorgement of gains from registration violations).

III. <u>NECESSITY OF DISGORGEMENT</u>

Disgorgement is necessary to make the Commission's Rule 102(e) Bar Order meaningful, make Jones' violation of the Commission's Order unprofitable, and deter others from violating similar Commission orders.  Disgorgement is also the only practical and sufficient remedy in this case, as Jones should not be permitted to retain and enjoy the money he obtained through violations of the Commission's Order.

A. <u>Disgorgement is Necessary to Effectuate a Remedy</u>

As this Court noted, there is a final, important question in this case:

> [H]ow does one police the bar order?  You say, well, one method is to make sure that a violator, so-called, doesn't benefit from the violation. And the suggestion is is that you take away from the violator the benefit that he's received from purportedly violating the bar order.  Now as a device for ensuring compliance for a bar order, appropriate bar order, you say to those that may want to violate bar orders down the road, if you violate, you can't make any money doing it, so give up the money that you've made, as a device to police and monitor the bar order.

Trial Tr. at p. 583.

This Court can and should impose the remedy of disgorgement to not only make the Commission Bar Order meaningful with real consequences, but also to make the Court's Order both prospective and retrospective.  The Court properly ordered Jones to cease violating his Bar Order going forward.  However, to afford adequate relief to the Commission, the Court should also separate Jones from the past monies he obtained through his violations.  "It is for the federal courts to adjust their remedies so as to grant the necessary relief where federally secured rights are invaded."  *SEC v. Manor Nursing*

10

*Centers, Inc.*, 458 F.2d 1082, 1103 (2d Cir. 1972) (citing *J. I. Case Co. v. Borak*, 377 U.S. 426, 433 (1964); *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 391 (1970)). Pursuant to their equity jurisdiction, courts have "the authority to grant the full panoply of equitable remedies so that the plaintiff can obtain complete relief." *SEC v. Antar,* 831 F. Supp. 380, 398 (D.N.J. 1993) (citing *SEC v. Materia,* 745 F.2d 197, 200 (2d Cir. 1984)).

The equitable remedy of disgorgement is the only practical way to make the Commission's Bar Order meaningful.  Because a Commission Order is not an order of a District Court, the Commission cannot bring a contempt action against those who violate its orders.  *See Ins. Co. v. Mast Constr. Co.*, 159 F.3d 1311, 1315 (10th Cir.1998) (setting forth the elements of a contempt action).  Thus, if disgorgement is not ordered, individuals would be free to violate Commission bar orders without fear of being separated from their ill-gotten gains or of being faced with a contempt proceeding. Barred individuals, many posing a serious threat to the security of our markets, would be incentivized to violate their Bar Order if they stood to financially gain from their violations.  Indeed, as the Court recognized, but for disgorgement, what would deter a barred individual from violating a Commission Bar Order if they stood to profit through violations?

As discussed above, federal courts have recognized the need to order disgorgement to provide full relief against those who violate Commission bar orders. This Court should do so as well.

B. Disgorgement is Necessary to Deter Violations.

Courts have long recognized that, in order to deter violations, those violations needed to be unprofitable.  *See*, *e.g.*, *SEC v. Texas Gulf Sulphur Co.*, 446 F.2d 1301

(2d Cir. 1971); *Manor Nursing*, 458 F.2d 1082; *SEC v. First City Financial Corp. Ltd*, 890 F.2d 1215, 1230 (D.C. Cir. 1989).  As this Court recognized:

> It's the device that's available, purportedly, not only to say, hey, we meant what we said and you can't profit by it. And to others who may be similarly situated, you're not going to get a benefit and keep it if you violate the orders that are entered.

Trial Tr. at p. 585.

This emphasis on public protection demonstrates the equitable nature of disgorgement.  *SEC v. Cavanagh*, 445 F.3d 105, 116 (2d Cir. 2006).

Jones is, unfortunately, not the only person that has been barred from practicing before the commission due to misconduct.  The Court should recognize that other barred individuals exist, and they too are capable of making money though violating their respective bar order.  The Court should not incentivize these people to engage in violative conduct by allowing Jones to keep the monies he made through his violations.  Indeed, not only would it be unfair to those that properly obeyed their bar order, but allowing Jones to keep the monies he made through bar order violations would simply encourage individuals who engaged in past misconduct to engage in future misconduct.

To deter others from violating similar Commission bar orders, this Court should require Jones to disgorge the proceeds of his violations.

C. Disgorgement is Necessary to Benefit Investors.

Section 21(d)(5) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78u(d)(5), specifically allows this Court to grant *any* equitable relief appropriate for the benefit of investors.  Disgorgement against Jones would benefit investors.

12

As Jones' witness recognized:

Never in any instance when an accounting firm prepares financial statements that are audited by an auditor does that information ever get published, does anyone ever know, the public does not know and the PCAOB and the SEC does not know who actually wrote those financial statements and put them together.

Trial Tr. at p. 410.

As a result, the Commission's mission to protect investors includes a program to ensure that individuals, including accountants, who provide that information to investors are competent to do so. The Exchange Act and the Commission's Rules of Practice provide that the Commission may prohibit individuals who violate applicable professional standards from practicing before it, including preparing financial statements that are filed with the Commission. *See* 15 U.S.C. § 78d-3; 17 C.F.R. § 201.102. As this Court noted, the Commission must have an effective way to police the orders that allow it to protect investors. Without making violations of these Commission orders unprofitable to Jones, the Commission has no effective way to enforce the order against Jones or to deter others from violating similar orders. Ordering disgorgement against Jones would benefit investors by protecting the program that helps the Commission protect investors.

D. Disgorgement is the Only Appropriate and Sufficient Remedy.

Other potential remedies, such as vacating the Bar Order would not be a practicable or effective remedy in this case. Vacating the Bar Order would also vacate this Court's Order to obey that Bar Order. That result would significantly reward Jones for his violations – there would be no Federal Court Order against him, there would be no Commission Bar Order against him, only the risk of a future bar order (if the

13

Commission could succeed in the underlying aged case), and he would get to keep the ill-gotten gains from his violation of the Bar Order.

Vacating the bar order would not separate Jones from the ill-gotten gains obtained through conduct this Court has already found to have been improper. The Court should decline to find that Jones improperly practiced before the Commission, but allow him to keep those monies he obtained through his misconduct. Vacating the Bar Order would also incentivize Jones, and other similarly situated individuals, to violate their bar orders if they were able to make money through those violations. Or, put another way, merely vacating the Bar Order would serve no deterrence to individuals who can make substantial profits through violating a bar order. The Court should not incentivize barred individuals to engage in this sort of economic analysis.

In addition, the Commission would be severely prejudiced if the only remedy was permission to resurrect a case that is more than a decade old. Jones's Bar Order stems from conduct that occurred prior to 2001. As the old adage goes, "cases do not age like wine." Witnesses' memories fade or they become unavailable, financial institutions destroy their records, and Commission attorneys leave the SEC. Permitting the Commission to bring the action that gave rise to the Bar Order is simply an insufficient remedy in this case.

For these reasons, the Court should not permit Jones to keep and enjoy the monies he obtained through violating his Bar Order.

IV. AMOUNT OF DISGORGEMENT

The disgorgement ordered need only be a reasonable approximation of the profits causally connected to the violation. *First City Financial*, 890 F.2d at 1231. In determining the amount of disgorgement, any uncertainty in the calculation should fall

on the wrongdoer.  *Id.*, *see also SEC v. Patel*, 61 F.3d 137, 140 (2d Cir. 1995).  As a result, the district court is not required to trace every dollar retained.  *See SEC v. First Jersey Sec. Inc.,* 101 F.3d 1450, 1475 (2d Cir. 1996).  Once the SEC has established that the disgorgement figure reasonably approximates the unlawful proceeds, the burden of proof shifts to the defendant, "who must demonstrate that the disgorgement figure is not a reasonable approximation."  *Id.*, *SEC v. Hughes Capital Corp.*, 917 F. Supp. 1080, 1085 (D. N.J. 1996), *aff'd* 124 F.3d 449 (3d Cir. 1997).  In addition, "the amount of disgorgement should include all gains flowing from the illegal activities."  *SEC v. JT Wallenbrock & Assoc.*, 440 F.3d 1109, 1114 (9th Cir. 2006).  Courts have consistently held that disgorgement liability should not be reduced for business or any other expenses.  *SEC v. Kenton Capital Ltd.*, 69 F. Supp. 2d 1, 16 (D. D.C. 1998).

A.  <u>Methods for Calculating Disgorgement</u>

As is frequently the case in Commission cases, the records provided by defendant Jones from which disgorgement might be calculated are incomplete and imprecise.  *See*, *e.g.*, *Hughes Capital Corp.*, 124 F.3d at 455 (Defendants often intentionally fail to keep accurate records and refuse to cooperate with investigators in identifying illegal profits); *SEC v. Inorganic Recycling Corp.,* 2002 WL 1968341 (S.D.N.Y. August 23, 2002) (The risk of uncertainty falls on defendants since wrongdoers rarely keep accurate records of the proceeds of their violations).  For that reason, "[r]ules for calculating disgorgement must recognize that separating legal from illegal profits exactly may at times be a near-impossible task.  *SEC v. Patel*, 61 F.3d 137, 139 (2d Cir. 1995).  Hence, "the risk of uncertainty should fall on the wrongdoer whose illegal conduct created that uncertainty**."**  *First City Financial*, 890 F.2d at 1232.

15

In this case, there are at least two methods for calculating disgorgement. Although both are proper, because of the lack of precision in the records Jones provided to the Commission, neither calculation is precise. Nonetheless, because the uncertainty is due to Jones' poor record-keeping, the lack of precision should not prevent an order of disgorgement. *See id.*

1.  Method One – Jones' Testimony.

The first possible method of determining disgorgement is also the simplest – hold Jones to his testimony about how much of his work was financial preparation work for public companies. Jones testified that, based on his knowledge of the business,[3] approximately 50 percent of his company's business was, and had been during the relevant period, financial statement preparation work. Trial Tr. at p. 187. He further testified that 60 percent of that financial statement preparation work was for public companies and that an additional 30 percent of financial statement preparation work was for private companies that intended to go public. Trial Tr. at p. 190. Defendant's Exhibit 319 indicates that Jones income from his company from 2008 to 2013 was $1,487,097.

As a result, this method is the simple calculation of multiplying the amount Jones received from his company times the percentage of financial statement work he did for public companies. Thirty percent of Jones income is attributable to financial statement preparation work for public companies.

---

[3] Jones testified that he was the majority owner of the company, and the only person who received distributions from the company. Trial Tr. at 187 – 188.

2.  Method Two – QuickBooks Analysis.

The second method is somewhat more complex, as it requires evaluation of Jones' accounting records as scheduled by witnesses for the Commission and for Jones.[4]  The schedules are based on Mr. Jones' QuickBooks, which is the information he provided the Commission and his witness concerning his billings.  Trial Tr. at pp. 203, 464-465.

a.  Assumptions to be Applied

Because of the lack of clarity in the records provided by defendant Jones, this method requires decisions concerning several assumptions to be used.

i.  Which Clients are at Issue?

Mr. Jones QuickBooks includes entries for public companies, private companies, and individuals.

Jones' position:

Jones has argued that he should disgorge proceeds for work on only the 21 public companies identified in the witness Lynn Turner's report, as opposed to all public companies for which he worked.  There is no basis for that position.  Mr. Turner was not asked to identify all the public companies for which Mr. Jones did work, and his report makes clear that the identified companies were intended to be exemplars.  *See* Exhibit 263.  Jones' position would exclude most of the work he, himself, identified as financial statement work.  *See* Exhibit 320.

---

[4] Defendant's witness Daniel Rondeau prepared a schedule that was admitted as Exhibit 264. Commission witness Donna Walker prepared schedules that were substantially similar, but separated the time periods and applied different assumptions.  Those schedules were admitted as Exhibits 245 through 262.

The Commission's position:

All public companies for which Jones performed prohibited work should be included.

  ii. <u>What Work is to be Included?</u>

There was no consistency in the way in which work was described in the QuickBooks.  Mr. Jones said, "Some are [sic] identified one way, some are identified another."  Trial Tr. at p. 224.  Mr. Jones did testify, however, that numerous examples of financial statement work were described as "consultation" (or some variation thereof) in the QuickBooks.  Trial Tr. at pp. 204–224.

<u>Jones' first position:</u>

Jones' initial position was that only work specifically identified as financial statement work in the QuickBooks should be included and that all other work should be excluded.

<u>Jones' second position</u>

After Mr. Jones testified that much of the work described as "consultation" was, in fact, financial statement work, Jones changed his position.  His second position was that <u>all</u> work for the 21 companies, regardless of how the work was described, should be included.  *See* Exhibit 320.

<u>The Commission's position</u>

The Commission's position is that, because it is impossible to tell which "consultation" work was SEC related, and because that uncertainty is the fault of Mr. Jones who created the records, for all public companies, all work that was either SEC related work or described as "consultation" should be included.  *See* Exhibits 245-262.

18

### iii.   Whether Taxes Should Be Deducted?

Jones' position

Jones believes he should receive credit for taxes paid on his ill-gotten gains.

The Commission's position

Courts generally do not give credit towards disgorgement for taxes paid on ill-gotten gains.  *See SEC v. U.S. Pension Trust Corp.,* 2011 WL 5061730 (11th Cir. Oct. 26, 2011) (not necessary to deduct income tax already paid on the defendant's ill-gotten gains); *SEC v. Razmilovic,* 822 F. Supp. 2d 234, 277 (E.D.N.Y. 2011) (refusing to offset disgorgement amount for paid income taxes and finding "no legal authority to support a deduction for taxes paid upon ill-gotten gains"), *aff'd in relevant part, vacated in part, remanded,* 738 F.3d 14 (2d Cir. 2013); *SEC v. Koenig,* 532 F. Supp. 2d 987, 994 (N.D. Ill. 2007) (refusing to deduct income tax from the disgorgement amount was not punitive), *aff'd in relevant part & remanded,* 557 F.3d 736 (7th Cir. 2009). *SEC v. DiBella,* No. 2008 WL 6965807, at *3 (D. Conn. Mar.13, 2008) (finding that taxes are not among the direct transaction costs that courts may, in their discretion, deduct from the disgorgement amount), *aff'd,* 587 F.3d 553 (2d Cir. 2009); *SEC v. Zwick,* 2007 WL 831812, at *24 (S.D.N.Y. Mar.16, 2007) ("the deduction from the disgorgement amount that [the Defendant] seeks for general income taxes does not fall within the class of deductions occasionally allowed for transaction-specific costs."), *aff'd,* 317 F. App'x 34 (2d Cir. 2008) (citing *SEC v. World Gambling Corp.,* 555 F. Supp. 930, 935 (S.D.N.Y.1983) (stating that "[t]he 'profit obtained' cannot be said to be a punitive standard for disgorgement, even though it may be slightly overstated by overhead and income taxes ...."); *SEC v. Svoboda,* 409 F. Supp. 2d 331, 345 (S.D.N.Y. 2006) (the defendant "has failed to identify any legal authority supporting the deduction of capital

19

gains taxes from illicit trading gains."). Accordingly, the Commission's position is that Jones should not receive credit for taxes paid.

> b.  Method Used

While Jones and the Commission used different assumptions, the method used to apply those assumptions was the same.

1)  The number of hours of violative work billed in a year was added up.  For instance, for 2009, the Commission calculated that SEC related work totaled 2,387 hours.  Exhibit 245.  Jones calculated that the total hours for the companies identified by Mr. Turner was 591 hours.  Exhibit 320.

2)  That total was divided by the total number of hours billed for the year to calculate the percentage of hours spent on violative work.  For example, for 2009 the Commission divided the 2,387 hours of SEC related work by a total number of hours billed of 3,667.5, resulting in a calculation of 65.09% of all Jones' work being SEC related work.  Exhibit 245.  Jones divided the 591 hours by a total hours of 3,668, resulting in a calculation of 16.11% of all Jones' work being for companies identified by Mr. Turner.  Exhibit 320.

3)  That percentage was then applied to Jones income for the year to calculate the earnings attributable to the violative work.  For example, for 2009 the Commission multiplied $319,185, Jones total income from R. Gordon Jones, PC, by 65.09%, resulting in a calculation of $207,742 attributable to SEC related work for 2009.  Exhibit 245.  Jones multiplied $319,185 by 16.11%, resulting in a calculation of $51,413 attributable to work for companies identified by Mr. Turner.  Exhibit 320.

4)  Finally, the amount of ill-gotten gains for each year was added to calculate a grand total.

B.  The Amount of Disgorgement

    1.  Method One

$446,129.  Mr. Jones testified that 50 percent of his business was financial statement preparation work and that 60 percent of that 50 percent was for public companies, so 30 percent of all his work is financial statement work for public companies.  Total income for the relevant period is $1,487,097.  30 percent of that total is $446,129.

    2.  Method Two

Jones' position

$294,316.  *See* Exhibit 320 for the relevant calculations.

The Commission's position

$916,926.  *See* Exhibit 245 for the relevant figures.

C.  Pre-judgment Interest

Disgorgement normally includes prejudgment interest at the IRS rate for underpayment to ensure that wrongdoers do not profit from their illegal conduct.  *Manor Nursing,* 458 F.2d at 1105.  The Commission can provide a pre-judgment interest calculation on the amount of disgorgement ordered.

V.  Conclusion

For the reasons stated above, the Court should order Jones to disgorge the

gains from his violations of the Commission's Order.

DATED: October 20, 2015.

s/ Polly Atkinson
Polly Atkinson
AtkinsonP@sec.gov
Mark L. Williams
WilliamsML@sec.gov
U.S. Securities and Exchange Commission
Byron G. Rogers Federal Building
1961 Stout Street
Suite 1700
Denver, CO  80294-1961
(303) 844-1000

<u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on October 20, 2015, she caused a true and correct copy of the foregoing to be served through the Court's Electronic Court Filing System (CM/ECF), which will automatically send an email notification to all parties of record.

<u>s/Polly Atkinson</u>