Polly Atkinson, Esq.,
AtkinsonP@sec.gov
Mark L. Williams, Esq.,
WilliamsML@sec.gov
Securities and Exchange Commission
Byron G. Rogers Federal Building
1961 Stout Street
Suite 1700
Denver, CO  80294-1961
(303) 844-1000

Daniel J. Wadley, Esq., Utah Bar No. 10358
WadleyD@sec.gov
Securities and Exchange Commission
351 South West Temple, Suite 6.10
Salt Lake City, UT 84101
(801) 524-67488
(Local Counsel)

*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | | |
|---|---|---|
| * | | |
| UNITED STATES SECURITIES | * | |
| AND EXCHANGE COMMISSION, | * | REPLY IN SUPPORT OF |
| Plaintiff, | * | REQUEST FOR DISGORGEMENT |
| * | | |
| v. | * | |
| * | | |
| R. GORDON JONES, C.P.A., | * | Case No. 1:13-cv-00163-BSJ |
| Defendant. | * | District Judge Bruce S. Jenkins |
| | * | |

## TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................. 1

II.   JONES IS WRONG THAT THERE IS NO AUTHORITY
      FOR DISGORGEMENT ..................................................................... 1

III.  THERE IS ABUNDENT EVIDENCE SUPPORTING DISGORGEMENT ............. 4

      A.    The Court Should Deny Jones' Motion to Dismiss if Necessary ............... 4

      B.    Jones Testified About his Ill-gotten Gains .................................................. 4

IV.   DISGORGEMENT IN THIS CASE IS PROPER ........................................ 5

      A.    Jones Misrepresents his Offer of Settlement in the
            102(e) Proceeding ...................................................................... 6

      B.    Disgorgement is not Restitution – The Focus is on the Violator ................ 7

      C.    Disgorgement is Available in this Case – It is not Limited ......................... 8

V.    DISGORGEMENT IN THIS CASE IS APPROPRIATE ........................................ 9

      A.    There is Precedent for Disgorgement for Bar Order Violations ................ 9

      B.    Prince and Armstrong do not Help Jones ................................................. 11

      C.    Salary is not Exempt from Disgorgement................................................. 11

      D.    Statute of Limitations is not an Issue Here................................................. 12

            1.    Disgorgement is not Subject to 28 U.S.C. § 2462 ......................... 12

            2.    Jones Misunderstands the Discovery Rule ................................... 14

            3.    There are Violations Within the Last Five Years ........................... 14

      E.    Public Policy Argues for Disgorgement in This Case................................ 15

            1.    Jones' Discussion of Settlement is Inappropriate and Baseless ... 15

            2.    Jones' Pandora's Box Argument is Baseless................................. 15

            3.    Disgorgement is in the Public Interest............................................ 15

VI.   THERE IS AMPLE PROOF OF DISGORGEMENT........................................... 17

      A.    The 21 Company Fallacy ......................................................................... 17

B.    The Reasonable Approximation Standard Applies .................................. 17

C.    The Commission Proved a Reasonable Approximation of Disgorgement ..................................................................................... 18

D.    Jones Attempted to Disprove Disgorgement............................................ 18

E.    The Commission Rebutted Jones' Attempt.............................................. 18

    1.    Walker's schedule only includes "consultation" for public companies...................................................................................... 19

    2.    The schedules includes only Jones' own billings .......................... 19

    3.    No work identified as tax or other work was included................... 19

    4.    Walker's Conclusion is Sound....................................................... 20

F.    Appropriate Disgorgement is Between $294,316 and $916,926.............. 20

G.    The Court Has Discretion to Award Prejudgment Interest ....................... 21

VII.    CONCLUSION.................................................................................... 21

**Table of Authorities**

Page

*Broadbent v. Advantage Software, Inc.*, 2011 WL 754838
(10th Cir., March 4, 2011) ............................................................................ 12

*Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340 (1998) ............................... 2

*Gabelli v. SEC,* 133 S. Ct. 1216 (2013).................................................................. 12, 13

*In re Robert Armstrong III*, 2005 WL 1498425 (June 24, 2005)..................................... 11

*J. I. Case Co. v. Borak*, 377 U.S. 426 (1964) .................................................................. 8

*Mills v. Electric Auto-Lite Co.*, 396 U.S. 375 (1970) ....................................................... 8

*Riordan v. SEC*, 627 F.3d 1230, 1234 (D.C. Cir. 2010)................................................... 12

*SEC v. Amerindo Inv. Advisors, Inc.*,2014 WL 405339 (Feb. 3, 2014)......................... 13

*SEC v. Barraco*, 438 F.2d 97 (10th Cir. 1971).................................................................. 2

*SEC v. Blavin*, 760 F.2d 706 (6th Cir. 1985) ............................................................. 8, 11

*SEC v. Capital Monthly Income Fund, LP*, 28 F. Supp. 3d 887 (D. Minn. 2014) ........... 12

*SEC v. Cavanagh*, 445 F.3d 105 (2d Cir. 2006)........................................................... 7, 8

*SEC v. Curshen*, 2010 WL 1444910 (10th Cir. April 13, 2010) ....................................... 2

*SEC v. DiBella*, 409 F. Supp. 2d 122 (D. Conn. 2006).................................................... 3

*SEC v. Druffner*, 802 F. Supp. 2d 293 (D. Mass. 2011) ................................................ 12

*SEC v. First City Financial Corp. Ltd*, 890 F.2d 1215 (D.C. Cir. 1989)........ 2, 3, 8, 16, 18

*SEC v. First Jersey Sec. Inc.,* 101 F.3d 1450 (2d Cir. 1996)......................................... 18

*SEC v. First Pac. Bancorp*, 142, F.3d 1186 (9th Cir. 1998)............................................. 7

*SEC v. Fox*, 2013 WL 3746173 (10th Cir. July 18, 2013)................................................. 2

*SEC v. Funinaga*, 2014 WL 4977334 (D.Nev. Oct. 3, 2014) ................................... 13, 14

*SEC v. Geswein*, 2 F.Supp. 3d 1074 (N.D. Ohio, 2014)................................................. 13

*SEC v. Gordon*, 2013 WL 1632696 (10th Cir. Apr. 17, 2013)...................................... 2, 4

*SEC v. Graham*, 21 F.Supp. 3d 1300 (S.D. Fla, 2014).............................................. 13, 14

*SEC v. Hughes Capital Corp.*, 124 F.3d 449 (3rd Cir. 1997)............................................ 7

*SEC v. Hughes Capital Corp.*, 917 F. Supp. 1080 (D. N.J. 1996),
*aff'd* 124 F.3d 449 (3d Cir. 1997)..................................................................... 18

*SEC v. LeCroy*, 2014 WL 4403147 (N.D. Ala Sept. 5, 2014) ......................................... 13

*SEC v. Los Angeles Trust Deed & Mortgage Exchange*, 186 F. Supp. 830
(S.D. Cal. 1960) ........................................................................................ 2, 9

*SEC v. M&A West, Inc.*, 538 F.3d 1043 (9th Cir. 2008).................................................. 8

*SEC v. Manor Nursing Centers, Inc.,* 458 F.2d 1082 (2nd Cir. 1972) ................. 8, 16, 21

*SEC v. Martino*, 255 F. Supp. 2d 268 (S.D.N.Y. 2003)............................................. 10, 11

*SEC v. Maxxon, Inc.*, 465 F.3d 1174 (10th Cir. 2006)............................................... 2, 12

*SEC v. Merchant Capital, LLC*, 2009 WL 294751 (11th Cir. February 9, 2009) .............. 8

*SEC v. Merchant Capital, LLC*, 2012 WL 3205543 (11th Cir. August 7, 2012) ......... 5, 12

*SEC v. Patel*, 61 F.3d 137 (2d Cir. 1995). ....................................................... 18

*SEC v. Prince*, 942 F.Supp. 2d 108 (D.D.C. 2013) ............................................. 5, 11, 15

*SEC v. Smart*, 678 F.3d 850(10th Cir. 2012).................................................... 2

*SEC v. Strebinger*, 2015 WL 4307398 (June 11, 2015) ................................................ 14

*SEC v. Taber*, 2013 WL 6334375 (S.D.N.Y. Dec. 4, 2013) ........................... 9, 10, 11, 15

*SEC v. Telsey*, 1991 WL 72854 (S.D.N.Y. Mar. 13, 1991) ....................................... 10, 11

*SEC v. Texas Gulf Sulphur Co.*, 446 F.2d 1301 (2d Cir. 1971) ............................. 2, 3, 16

*SEC v. Wolfson*, 2007 WL 2807741 (10th Cir. Sept. 25, 2007)...................................... 2

*Smith v. SEC,* 653 F.3d 121 (2d Cir. 2011) ..................................................... 2

*Tull v. United States*, 481 U.S. 412 (1987) ..................................................... 2

*United States v. Nacchio*, 573 F.3d 1062 (10th Cir. 2009) ............................................ 12

Statutes

15 U.S.C. §§ 78u(d)(5) ................................................................................. 3, 16

15 U.S.C. § 78u(e) ..................................................................................... 2, 3, 6

17 C.F.R. § 201.102(e)........................................................................... 2, 6, 9, 10

28 U.S.C. § 2462.................................................................................... 12, 13, 14

Federal Rule of Evidence 408 ................................................................... 15

F.R.E. 801(d)(1)(A)..................................................................................... 5

F.R.E. 801(d)(2) ......................................................................................... 5

F.R.E. 803(5)............................................................................................. 5

Private Securities Litigation Reform Act (1995) and the Sarbanes-Oxley Act (2002)...... 3

Securities Law Enforcement Remedies Act of 1990 ....................................... 3

S. Rep. 101-337 (1990)............................................................................... 3

H. Rep. 101-616 (1990)............................................................................... 3

In response to the Court's directive, the Commission filed a brief setting forth the authority for disgorgement and the method for and amount of appropriate disgorgement in this case.  In response, Jones filed a brief disregarding relevant law on disgorgement, ignoring evidence presented during trial, and predicting outlandish consequences if disgorgement is granted.  As discussed below, Jones's arguments against disgorgement are without legal or factual support.

## I.   INTRODUCTION

Despite being ordered by the Securities and Exchange Commission to refrain from practicing accounting before the Commission, R. Gordon Jones consistently and regularly did so in a myriad of ways for a number of years.  Despite this Court's finding that Jones did so and did so without any attempt to comply with the Commission's order, Jones now argues that, despite overwhelming proof that he profited from his violations, he should not incur any consequence for violating the Commission's Order hundreds of times.  The Court should reject Jones' arguments, hold that there should be real consequences for violation of Commission orders, and order Jones to disgorge his ill-gotten gains.

## II.   JONES IS WRONG THAT THERE IS NO AUTHORITY FOR DISGORGEMENT.

Jones initially states that he "has never disputed" "that federal courts have the power to grant equitable relief and that disgorgement … is a form of equitable relief."  Jones Response Brief at p. 2.  He then proceeds to do just that ("there is no statutory or other basis is this case for the imposition of an "equitable monetary remedy" … whether it is labeled "disgorgement" or something else).  *Id.*

Whether or not Jones disputes it, the controlling law of this circuit is that disgorgement is an equitable remedy and this Court has authority to order

disgorgement.  *See SEC v. Maxxon, Inc.*, 465 F.3d 1174, 1179 (10th Cir. 2006) ("Disgorgement is by nature an equitable remedy…."); *SEC v. Barraco*, 438 F.2d 97, 99 (10th Cir. 1971) ("the full scope of [the court's jurisdiction in equity] is to be recognized and applied" in cases under 21(e) of the Exchange Act); *SEC v. Wolfson*, 2007 WL 2807741 (10th Cir. Sept. 25, 2007); *SEC v. Curshen*, 2010 WL 1444910 (10th Cir. April 13, 2010); *SEC v. Smart*, 678 F.3d 850(10th Cir. 2012); *SEC v. Gordon*, 2013 WL 1632696 (10th Cir. Apr. 17, 2013); *SEC v. Fox*, 2013 WL 3746173 (10th Cir. July 18, 2013);[1] *see also Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 352 (1998) (disgorgement of improper profits is equitable monetary relief); *Tull v. United States*, 481 U.S. 412, 424 (1987) (disgorgement of improper profits is traditionally considered an equitable remedy).

    Federal courts have long recognized the need, and the authority, to grant equitable relief in Commission cases.  *See, e.g., SEC v. Los Angeles Trust Deed & Mortgage Exchange*, 186 F. Supp. 830, 890 (S.D. Cal. 1960); *Smith v. SEC,* 653 F.3d 121, 127 (2d Cir. 2011).  Moreover, federal courts have long, and frequently, recognized the need, and the authority, to grant the equitable remedy of disgorgement in Commission cases.  *See, e.g., SEC v. Texas Gulf Sulphur Co.*, 446 F.2d 1301, 1307 (2d Cir. 1971) (approving disgorgement and holding, "we do not read Section 21(e) as restricting the remedies which the SEC can pursue to injunctive relief."); *SEC v. First City Financial Corp. Ltd*, 890 F.2d 1215, 1230 (D.C. Cir. 1989) (rejecting the argument that disgorgement is limited to fraud actions and

---

[1] Jones does not address any of this controlling authority in his response.

upholding an order of disgorgement in a case alleging violations of Section 13(d) of the Exchange Act, a non-scienter, reporting provision).

Furthermore, courts have specifically addressed, and rejected, Jones' argument that Congress has not authorized federal courts to order disgorgement in Commission cases.  Jones Response at p. 2.  "Congress has made various amendments to the securities laws, including the Private Securities Litigation Reform Act (1995) and the Sarbanes-Oxley Act (2002), but has declined these opportunities to limit or eliminate the Commission's practice of seeking and obtaining orders of disgorgement."  *SEC v. DiBella*, 409 F. Supp. 2d 122, 131 (D. Conn. 2006).  In fact, when enacting the Securities Law Enforcement Remedies Act of 1990, Congress explicitly referred to SEC disgorgement actions and acknowledged the SEC's authority to seek disgorgement.  S. Rep. 101-337 (1990); H. Rep. 101-616 (1990).

Courts hold that Section 21(e) does not restricting the remedies which the SEC can pursue to injunctive relief.  *Texas Gulf Sulphur*, 446 F.2d at 1307.  "Disgorgement, then, is available simply because the relevant provisions of the Securities Exchange Act of 1934, sections 21(d) and (e), vest jurisdiction in the federal courts."  *First City Financial Corp.*, 890 F.2d at 1230.

Finally, as stated in the Commission's Brief in Support of Disgorgement, Section 21(d)(5) of the Exchange Act further provides authority for Federal Courts to grant any appropriate equitable relief.  *See* Commission Brief [Doc. 108] at p. 2. Jones does not address Section 21(d) in his Response.

3

III.   THERE IS ABUNDENT EVIDENCE SUPPORTING DISGORGEMENT.

Jones argues that the Court should dismiss the Commission's disgorgement claim because the Commission did not put on sufficient evidence of disgorgement in its case in chief.  Jones Response at p. 3.  Jones' argument ignores his own admissible testimony elicited in the Commission's case in chief.

A.   The Court Should Deny Jones' Motion to Dismiss if Necessary.

Jones notes that the Court held in reserve Jones' motion to dismiss the Commission's disgorgement claim.  In doing so, the Court said, "We do have … a summary of income over an extended period of time. We do have a statement by Mr. Jones himself as to portions. That in and of itself, it seems to me, may be sufficient. … [T]here's his testimony as to salary plus distributions and the fact that there were solitary distributions over a period of time."  Trial Transcript at p. 334. The Court should deny Jones' motion to dismiss, if it is necessary to do so.

B.   Jones Testified About his Ill-gotten Gains.

Jones argument that the Commission put on no evidence of disgorgement ignores his own admissible testimony.  In the Commission's case in chief, Jones testified that approximately 50 percent of his company's business was, and had been during the relevant period, financial statement preparation work.  Trial Tr. at p. 187.  He further testified that 60 percent of that financial statement preparation work was for public companies and that an additional 30 percent of financial statement preparation work was for private companies that intended to go public.  Trial Tr. at p. 190.

Jones argues that this testimony should be ignored because the cited testimony was originally given in sworn investigative testimony and at trial he

4

testified that he could not verify those statements.  Jones Response at p. 4.  But, for a number of reasons, there is no question that that testimony is admissible as evidence of ill-gotten gains.  First, Jones raised no objection to the testimony at trial.  *See* Trial Tr. at pp. 187, 190.  Second, Jones' prior investigative testimony is admissible as an admission by a party.  F.R.E. 801(d)(2).  Third, to the extent Jones' claims not to remember his original statements, Jones' prior investigative testimony is also admissible as a recorded recollection.  F.R.E. 803(5).  Finally, to the extent Jones' testified inconsistently at trial, his prior investigative testimony is admissible for impeachment.  F.R.E. 801(d)(1)(A).  Jones' testimony is clearly admissible.

Jones also argues that the testimony is not probative because it relates to J&J Consulting's business rather than Jones' own work.  Jones Response at p. 4.  However, because the Court found that Jones committed violations by instructing, reviewing, and/or overseeing the efforts of other individuals, specifically those at J&J Consulting, testimony about J&J Consulting's business preparing financial statements is clearly relevant.  Order, Doc. 109, at p. 23.

IV.   <u>DISGORGEMENT IN THIS CASE IS PROPER.</u>

As an initial matter, this is <u>not</u> a breach of contract suit.  It is a case about a violation by Mr. Jones of a Commission Order.  While Jones consented to the Order, that does not, in any way, dilute the importance of the Order or the need for Jones to comply with it.  Moreover, Jones unsupported statement that the Court described this action as a breach of contract case in closing is untrue.  *See* Jones Response at p. 6.  The Court never did so.  *See* Trial Tr. at pp. 555- 593.

5

Jones argues that this Court can grant only two types of relief in this case – the Court's Order requiring compliance under Section 21(e) of the Exchange Act or vacation of the Commission's Order.  Jones Response at pp. 6 – 7.  As discussed above and at length in the Commission's Brief, this Court has the power to order any equitable relief in this case, including disgorgement.

A.   Jones Misrepresents his Offer of Settlement in the 102(e) Proceeding.

Jones, referencing the offer of settlement he made in the 2001 102(e) proceeding, appears to argue that disgorgement is improper because vacating the Commission Order is the sole remedy for his violation of the Bar Order.  Jones Response at pp. 6 – 7.  In doing so, he ignores the clear language of his Offer of Settlement.  First, a cursory reading of the sentence cited by Jones demonstrates its inapplicability.  It says, "the Division of Enforcement may petition the Commission… ."  Jones Response at pp. 6 – 7.  The sentence is permissive, not mandatory.  In fact, the Division of Enforcement did not petition the Commission.  Instead, the Commission, itself, petitioned the Court for relief.  Moreover, the sentence must be read in the context of its paragraph:

> Jones understands and agrees to comply with the Commission's policy "not to permit a defendant or respondent to consent to a judgment or order that imposes a sanction while denying the allegation in the complaint or order for proceedings" (17 C.F.R. § 202.5). In compliance with this policy, Jones agrees: (1) not to take any action or to make or permit to be made any public statement denying, directly or indirectly, any allegation in the Order or creating the impression that the Order is without factual basis; and (2) that upon the filing of this Offer, Jones hereby withdraws any papers filed in this proceeding to the extent that they deny any allegation in the Order. If Jones breaches this agreement, the Division of Enforcement may petition the Commission to vacate the Order and restore this proceeding to its active docket.   Nothing in this provision affects Jones's testimonial obligations or right to take any legal or factual position in any forum in which the Commission is not a party.

6

Ex. 136(a) at p. 5, ¶5C.

When this paragraph is read in whole, it is clear that the "agreement" refers to Jones' agreement to comply with the Commission's policy concerning denials. *Id.* Nothing in Jones' Offer of Settlement limits the Commission from seeking disgorgement or the Court from granting it.

B. Disgorgement is not Restitution – The Focus is on the Violator.

Next, Jones avers, without citation, that "for relief to be equitable, there must be a victim." Jones Response at p. 7. The Commission is unaware of any case or statute standing for that proposition. Jones goes on to say "[t]he relief must be necessary to make *restitution* to a specific victim." *Id.* (emphasis added). Jones fundamentally misunderstands disgorgement and ignores the relevant case law. The purpose of disgorgement is <u>not</u> to compensate investors. *SEC v. Cavanagh*, 445 F.3d 105, 116 (2d Cir. 2006). Instead, the primary purpose is to prevent wrongdoers from unjustly enriching themselves through violations. *Id.*

Jones' citations do not support his proposition. In fact, in *SEC v. First Pac. Bancorp*, 142, F.3d 1186, 1192 (9th Cir. 1998), the Court found that:

> [I]t is quite clear from the district court's conclusions of law that *the remedy it granted was disgorgement rather than restitution. The fact that the district court directed that the disgorged funds be returned to the defrauded investors does not change the nature of the remedy.* Once *the primary purpose of disgorgement has been served by depriving the wrongdoer of ill-gotten gains*, the district court has broad discretion in determining the disposition of the disgorged funds. *Id.* (emphasis added).

In *SEC v. Hughes Capital Corp.*, 124 F.3d 449, 455 (3rd Cir. 1997), the Court does not discuss restitution at all, and, in finding a defendant jointly and severally liable for the entire amount of disgorgement, noted that, "[d]isgorgement is an

7

equitable remedy designed to deprive a wrongdoer of his unjust enrichment and to deter others from violating securities laws." *Id.* (citing *First City Financial*, 890 F.2d at 1230).

Jones' unsupported statement that the Court should look for a victim here fundamentally distorts the purpose of disgorgement – to deprive Mr. Jones of the proceeds of his violations.

C.   <u>Disgorgement is Available in this Case – It is not Limited.</u>

Jones argues, again without citation, that disgorgement is limited to cases involving fraud.  Jones Response at p. 9.  The case law is clear that disgorgement is not limited to fraud.  *See*, *e.g.*, *SEC v. Blavin,* 760 F.2d 706, 713 (6th Cir.1985) (unregistered investment advisor required to disgorge fees received for advice); *First City Financial.*, 890 F.2d at 1215 (D.C. Circuit - disgorgement of gains from violations of reporting provisions); *SEC v. Cavanagh*, 445 F.3d 105, 110 (2d Cir. 2006) (ordering disgorgement of gains from registration violations); *SEC v. M&A West, Inc.*, 538 F.3d 1043 (9th Cir. 2008) (ordering disgorgement of proceeds from registration violations); *SEC v. Merchant Capital, LLC*, 2009 WL 294751 at **2 (11th Cir. February 9, 2009) (same).

Jones also argues that disgorgement is limited to violations of the securities laws.  Jones' did violate the securities laws.  He violated an Order issued by the Commission under the laws regulating securities and policing securities transactions in the United States.  Courts have made clear that "[i]t is for the federal courts to adjust their remedies so as to grant the necessary relief where federally secured rights are invaded."  *SEC v. Manor Nursing Centers, Inc.*, 458 F.2d 1082, 1104 (2d Cir. 1972), (citing *J. I. Case Co. v. Borak*, 377 U.S. 426, 433 (1964); *Mills*

8

*v. Electric Auto-Lite Co.*, 396 U.S. 375, 391 (1970)).  As a court of equity, the district court has the authority to "mold its decree to meet the exigencies of the situation before it."  *SEC v. Los Angeles Trust Deed & Mortgage Exchange*, 186 F. Supp. 830, 890 (S.D. Cal. 1960).  As a result, Courts have ordered disgorgement, even against those who have not, themselves, violated the securities laws and, as discussed below, have ordered disgorgement against those who violate Commission bar orders.

Clearly, this Court has the power to order disgorgement for Jones' violations, and it would be proper for the Court to do so.

V.    DISGORGEMENT IN THIS CASE IS APPROPRIATE.

A.    There is Precedent for Disgorgement for Bar Order Violations.

Jones' statement that there is no legal precedent for disgorgement of proceeds from violations of Commission bar orders is untrue and his attempt to distinguish the cases ordering disgorgement for such violations is pointless.  Jones' Response at p. 9.  Jones cannot dispute that, in each of the cases cited by the Commission, a federal district court found it appropriate to order disgorgement for violations of Commission bar orders and did so.[2]

In *SEC v. Taber*, 2013 WL 6334375, at *2 (S.D.N.Y. Dec. 4, 2013), Judge Forrest ordered Michael Taber to disgorge money gained from violation of a 102(e) bar order.  Judge Forrest held that such disgorgement "reflect[ed] the large amount of money illicitly gained by Taber following the 2004 Order, [and] furthers the important goal of deterrence….".  *Id.*  There is no basis for Jones' disparaging

---

[2] It is true that there are not a large number of cases concerning violations of Commission bar orders.  However, in each case in which the Commission has sought disgorgement for such violations, courts have granted that request.  Jones cites no case in which a court has ever denied such a request or found disgorgement to be improper, and the Commission knows of no such case.

assertion that Judge Forrest "rubberstamped" the Commission's application.  Jones'
Response at p. 10.  There is no indication that Judge Forrest was anything but
careful and thoughtful.  *See Taber*, 2013 WL 6334375, at *2.  Moreover, it is clear
that Taber contested the disgorgement award and that Judge Forrest ordered
disgorgement over his objection.  *See id*.  It is also clear that Judge Forrest did not
consider the circumstances of Taber's fraud injunction in ordering disgorgement.
*See id*.  *Taber* stands for the proposition that an award of disgorgement is
appropriate for violations of a Commission 102(e) order.

    *SEC v. Martino*, 255 F. Supp. 2d 268, 289 (S.D.N.Y. 2003) was a case
against a defendant who was subject to a Commission order barring her from acting
as a broker.  She, like Jones, repeatedly violated her bar order.  *Id*.  The court in
that case specifically found Martino's violation of the bar order to be a basis for
disgorgement:  "Martino's repeated and flagrant violations of securities laws *and
Bar Order* for more than three years more than amply demonstrate the
Commission's entitlement to disgorgement".  *Id*. (emphasis added).  *Martino* also
stands for the proposition that violation of a Commission bar order can support an
award of disgorgement.

    In *SEC v. Telsey*, 1991 WL 72854, at *2 (S.D.N.Y. Mar. 13, 1991) the Court
ordered disgorgement for Telsey's violations of a Commission order barring him
from acting as a broker.  Jones attempts to distinguish the case by showing that
Telsey's conduct was egregious and the case is old.  Jones' Response at 11.
Telsey's conduct was egregious, just as Jones' was.  Telsey's ongoing employment
violated his bar order.  So did Jones'.  Telsey concealed his bar from his clients.  So
did Jones.  Moreover, the fact that *Telsey* is an older case does not diminish the

10

fact that a federal district court considered whether to award disgorgement for violations of a Commission bar order and decided that it was proper and appropriate to do so. *Telsey* stands for that very proposition, as do *Taber* and *Martino*.

B. *Prince* and *Armstrong* do not Help Jones.

While Jones argues that *Armstrong* and *Prince* do not support disgorgement, he is wrong. Jones Brief at p. 12. Disgorgement was never sought in either case and is, therefore, not discussed in any way in either case. *In re Robert Armstrong III*, 2005 WL 1498425 (June 24, 2005); *SEC v. Prince*, 942 F.Supp. 2d 108 (D.D.C. 2013).[3]

C. Salary is not Exempt from Disgorgement.

Jones argument that the Commission cannot obtain disgorgement of legitimate earnings or salary is irrelevant. Jones Response at p. 13.[4] The Commission is not seeking disgorgement of *legitimate* earnings. The Commission is seeking the amount of earnings and salary reasonably calculated to relate to Jones' violations of the bar order. Jones cannot dispute that the authority is that illegitimate earnings and salary – earnings and salary gained through violations – should be disgorged. *See SEC v. Blavin*, 760 F.2d 706, 713 (6th Cir. 1985) ("The district court was well within its equitable power 'to make violations unprofitable,' when it ordered Blavin [unregistered investment adviser] to disgorge his

---

[3] The fact that disgorgement was not sought in those particular cases simply cannot inform an analysis of whether disgorgement is appropriate in cases in which the Commission does seek disgorgement. As previously noted, Jones has not cited a single case in which disgorgement of gains from violation of a Commission bar order was sought, but denied.

[4] Jones' statement that "[t]his is something the Commission fails to address in its memo" is puzzling, given that the Commission's Brief has a section on disgorgement of compensation. Doc. 108 at p. 8.

subscription fees."); *SEC v. Capital Monthly Income Fund, LP*, 28 F. Supp. 3d 887, 899 (D. Minn. 2014) ("[t]he simple question is whether the profits, fees, and other compensation derived from wrongdoing.  Here, they were.  Absent wrongdoing, the funds would not have come to [the investment adviser]");  *SEC v. Druffner*, 802 F. Supp. 2d 293, 297 (D. Mass. 2011) ("Defendants' argument that they "have already paid a heavy price" is unpersuasive…. net commissions [are] a reasonable approximation of the amount of unjust enrichment."); *SEC v. Merchant Capital, LLC*, 2012 WL 3205543 at **3 (11th Cir. August 7, 2012) ("The purpose of disgorgement is to deprive the wrongdoer of his ill-gotten gain, and there is no reason why salaries earned cannot be used to determine disgorgement.").

    D. <u>Statute of Limitations is not an Issue Here.</u>

Jones entire statute of limitations argument is fundamentally flawed because it rests on a false premise – that "disgorgement is not an equitable remedy in this case."  *See* Jones Brief at p. 14.  The monetary remedy the Commission seeks in this case – that Jones be deprived of the proceeds of his violations – fits exactly within the definition of disgorgement.  *See United States v. Nacchio*, 573 F.3d 1062, 1079 (10th Cir. 2009).  And, as discussed above, in this circuit disgorgement is an equitable remedy.  *Maxxon*, 465 F.3d at 1179.  And, in this circuit equitable claims brought in Commission actions are not subject to a statute of limitations.  *Broadbent v. Advantage Software, Inc.*, 2011 WL 754838 at **3 (10th Cir., March 4, 2011).

    1. <u>Disgorgement is not Subject to 28 U.S.C. § 2462.</u>

The statute of limitations found in 28 U.S.C. § 2462, which applies only to penalties, does not apply to the Commission's disgorgement claims.  *Riordan v. SEC*, 627 F.3d 1230, 1234 (D.C. Cir. 2010).  *Gabelli v. SEC,* 133 S. Ct. 1216

(2013), does not find or hold that disgorgement is a penalty or that disgorgement is subject to any statute of limitations.  *Gabelli* affirms that the five year statute of limitations in 28 U.S.C. § 2462 applies to penalties sought by the Commission and discusses when that statute of limitations begins to run.  *Id.*

*SEC v. Graham*, 21 F.Supp. 3d 1300 (S.D. Fla, 2014), upon which Jones relies, is a clear outlier and is inconsistent with the plain reading of *Gabelli,* which considered whether "[u]nder the general statute of limitations for civil penalty actions … the five-year clock begins to tick when the fraud is complete or when the fraud is discovered."  *Gabelli* 133 S. Ct. at 1218.  The Court went on to say that "[t]he SEC also sought injunctive relief and disgorgement, *claims the District Court found timely on the ground that they were not subject to § 2462*.  Those issues are not before us."  *Gabelli,* 133 S. Ct. at 1220, fn1 (emphasis added).

Every other court that has considered the issue holds that *Gabelli* did not intend the repose now argued by Jones.  *SEC v. Geswein*, 2 F.Supp. 3d 1074, 1077 (N.D. Ohio, 2014) ("the Court refuses to read more into the Supreme Court's decision than it says on its face.  Chief Justice Roberts repeatedly refers to 28 U.S.C. § 2462 as a statute of limitations; and this Court will not declare 28 U.S.C. § 2462 a statute of repose."); *SEC v. LeCroy*, 2014 WL 4403147 at *1 (N.D. Ala Sept. 5, 2014) ("the Supreme Court specifically noted that its holding did not extend to injunctive relief and disgorgement claims."); *SEC v. Funinaga*, 2014 WL 4977334 at *6 (D.Nev. Oct. 3, 2014) ("*Gabelli* involved an SEC civil enforcement proceeding for penalties, not disgorgement."); *SEC v. Amerindo Inv. Advisors, Inc.*,2014 WL 405339 (Feb. 3, 2014) ("the statute of limitations at issue in *Gabelli* applies only to

13

civil penalties, and does not prevent a finding of liability or an awarding of other kinds of remedies."). No court has followed *Graham*.

  2. <u>Jones Misunderstands the Discovery Rule.</u>

 Even if 28 U.S.C. § 2462 applied to disgorgement, which it does not, only non-continuing violations prior to 2008 would be excluded. Jones argument that the Commission must be charged with knowledge in 2001 when Jones began violating the order and therefore only has a five year window from that time to bring a case fundamentally misunderstands how a statute of limitation works. Jones Brief at p. 14. Each violation of the bar order by Jones was a new violation, which started any statute of violation running from the date of that new violation. *See*, *e.g.*, *Funinaga*, 2014 WL 4977334 at *6. Thus, if there are any violations with the last five years, there is no repose. *Id.* Moreover, "[u]nder the continuing violations doctrine, the statute of limitations under 28 U.S.C. § 2462 is tolled for a claim that otherwise would be time-barred where the violation giving rise to the claim continues to occur within the limitations period." *SEC v. Strebinger*, 2015 WL 4307398 *4 (June 11, 2015).[5]

  3. <u>There are Violations Within the Last Five Years.</u>

 As discussed in the Commission's Brief on Disgorgement and below, the violations for which the Commission seeks disgorgement continued into the five year period preceding the filing of the Commission's complaint.

---

[5] Even *Graham* recognized that the statute of limitations only applied "where the *last act* of each defendant giving rise to the SEC's claim against such defendant was not committed within five years prior to the SEC's filing of its complaint." *Graham*, 21 F.Supp 3d at 1308 (emphasis added).

E.   Public Policy Argues for Disgorgement in This Case.

1.   Jones' Discussion of Settlement is Inappropriate and Baseless.

Jones falsely argues that the Commission refused to settle this case because it is seeking vengeance.  Jones Brief at p. 15.  First, no evidence was ever offered or admitted showing that Jones ever made any reasonable offer of settlement in this case.  Second, even if Jones had made such an offer, it would be improper for Jones to mention it.  Federal Rule of Evidence 408 disfavors disclosure of any settlement discussions.  Third, there is absolutely no evidence that the Commission ever acted with any motivation other than to properly enforce its Order, make violation of that Order unprofitable, and deter others from violating other Commission orders – all appropriate motivations.  Jones' discussion of settlement should be ignored.

2.   Jones' Pandora's Box Argument is Baseless.

Jones' argument that the "Commission stands to impose havoc and pain" on those who have consented to bar orders if this Court orders Jones to disgorge his ill-gotten gains is without basis.  Jones Brief at p. 15.  There is no evidence that the disgorgement order in *Taber* has had such an effect.  In addition, the Commission *already* has incentive to enforce its bar orders and does so even in cases like *Prince* where it does not seek disgorgement.  Jones' Pandora's Box argument is baseless and should be ignored.

3.   Disgorgement is in the Public Interest.

Disgorgement is necessary to effectuate a remedy in this case.  This Court can and should impose the remedy of disgorgement to not only make the Commission Bar Order meaningful with real consequences, but also to make the

15

Court's Order both prospective and retrospective.  The equitable remedy of disgorgement is the only practical way to make the Commission's Bar Order meaningful.

Disgorgement is necessary to deter violations.  Courts have long recognized that, in order to deter violations, those violations needed to be unprofitable.  *See*, *e.g.*, *SEC v. Texas Gulf Sulphur Co.*, 446 F.2d 1301 (2d Cir. 1971); *Manor Nursing*, 458 F.2d 1082; *SEC v. First City Financial Corp. Ltd*, 890 F.2d 1215, 1230 (D.C. Cir. 1989).  To deter others from violating similar Commission bar orders, this Court should require Jones to disgorge the proceeds of his violations.

Disgorgement is necessary to benefit investors.  Section 21(d)(5) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78u(d)(5), specifically allows this Court to grant *any* equitable relief appropriate for the benefit of investors.  Without making violations of Commission orders unprofitable to Jones, the Commission has no effective way to enforce the order against Jones or to deter others from violating similar orders.  Ordering disgorgement against Jones would benefit investors by protecting the program that helps the Commission protect investors.

Disgorgement is the only appropriate and sufficient remedy.  Other potential remedies, such as vacating the Bar Order would not be a practicable or effective remedy in this case.  Vacating the Bar Order would also vacate this Court's Order to obey that Bar Order.  That result would significantly reward Jones for his violations – there would be no Federal Court Order against him, there would be no Commission Bar Order against him, only the risk of a future bar order (if the

Commission could succeed in the underlying aged case), and he would get to keep the ill-gotten gains from his violation of the Bar Order.

For these reasons, the ordering Jones to disgorge his ill-gotten gains would be in the public interest.

VI.     THERE IS AMPLE PROOF OF DISGORGEMENT.

A.  The 21 Company Fallacy.

Jones statement that the Commission put on evidence that Jones violated the bar order as to 21 public companies only is untrue.  While Commission expert Lynn Turner gave *examples* of 21 public companies for which Jones prepared financial statements or otherwise practiced before the Commission, he was clear that he did not intend to be exhaustive.  Turner Report, Ex. 263, at ¶87.  In addition, there was additional evidence offered at trial.  For instance, Jones himself, during the Commission's direct case, testified about a number of other public companies for which Jones worked including Feel Golf, Cygnus, Protect Pharmaceutical, Asia 4 Sale, Labwire, and Ethos.  Trial Tr. 192, 223, 232, 233, 263.  Jones also testified during the Commission's case in chief about supervising audit work and supervising the work of his employees in their practice before the Commission that could not be attributed to specific companies.  There was also evidence offered in the form of Jones' QuickBooks records, which showed that Jones worked for nearly 100 public companies.  *See* Ex. 247.

B.  The Reasonable Approximation Standard Applies.

There is no authority that the Commission is required to do more than provide a reasonable approximation of profits, and Jones' cites none.  Likewise, there is no authority that a defendant must have "purposefully" kept bad records.

17

*See* Jones Response at p. 16.  Here, Jones records were not complete or precise. For instance, the QuickBooks records described almost all of his work as "consulting" regardless of the work performed. Trial Tr. at pp. 204–224.  As a result, the Commission's disgorgement calculation need only be a reasonable approximation of Jones' profits.  *See First City Financial*, 890 F.2d at 1231.  Any uncertainty in the calculation should fall on Jones, as the wrongdoer and the party who failed to keep adequate records.  *Id. see also SEC v. Patel*, 61 F.3d 137, 140 (2d Cir. 1995).

C.  <u>The Commission Proved a Reasonable Approximation of Disgorgement.</u>

As required by the case law, the Commission provided a reasonable approximation of disgorgement based on Jones' own testimony and admissions. Once the Commission did so, the burden of proof shifted to Jones, "who must demonstrate that the disgorgement figure is not a reasonable approximation."  *See SEC v. First Jersey Sec. Inc.,* 101 F.3d 1450, 1475 (2d Cir. 1996), *SEC v. Hughes Capital Corp.*, 917 F. Supp. 1080, 1085 (D. N.J. 1996), *aff'd* 124 F.3d 449 (3d Cir. 1997).

D.  <u>Jones Attempted to Disprove Disgorgement.</u>

After the burden of proof shifted to Jones, he attempted to demonstrate that the Commission's disgorgement figure was not a reasonable approximation through Daniel Rondeau, a witness for Jones who created a schedule based on Jones' QuickBooks records.  *See* Exhibit 264.

E.  <u>The Commission Rebutted Jones' Attempt.</u>

After receiving Rondeau's schedule, the Commission tasked Commission witness Donna Walker with preparing rebuttal schedules based on Rondeau's

18

schedule.[6]  The Court has already determined that Donna Walker was a rebuttal witness.  Trial Tr. at p. 592.

Ms. Walker's Schedule is reliable.  Jones tries to cast doubt on the Commission's disgorgement number by making a number of false statements about Walker's schedules.  None of these statements has any basis.

1.  <u>Walker's schedule only includes "consultation" for public-companies.</u>

Without citation, and falsely, Jones avers that Walker considered "all 'consultation' entries to be 'SEC related'."  Jones Response at pp. 19, 20.  As Walker testified, she considered "consultation" as SEC related work <u>only</u> if the work was for a public company.  Trial Tr. at 508; *see*, *e.g.*, Exhibit 246 at line no. 2.

2.  <u>The schedules includes only Jones' own billings.</u>

Jones argues, without citation, that Walker's schedule includes "all public company related work of J&J."  Jones Response at p. 20, 21.  But this cannot be true.  Walker's schedule is based on Rondeau's schedule.  Rondeau's schedule, titled "Services by Gordon Jones" shows that it includes only Jones' own billings.  Ex. 264.  Moreover, even if it were true, the Court held that Jones' violations included his supervision of the work of J&J employees.  Order at p. 23.

3.  <u>No work identified as tax or other work was included.</u>

Jones states falsely, and without citation, that "'SEC-related' work could mean any accounting work for a public company," including tax work.  Jones' Response at p. 21.  But Walker testified that anything tax related was specifically excluded from SEC work.  Trial Tr. at p. 509.  The only companies considered to

---

[6] Walker's work was based only on Rondeau's schedule, not on an analysis of Jones' QuickBooks records, which the Commission was not able to analyze with any confidence.

have "SEC related" work were public companies and only work specifically related to the SEC, such as financial statements, public filings, and work labeled SEC, and consulting were included in "SEC related" work.  *Compare* Exs. 246 and 247.

        4.  Walker's Conclusion is Sound.

Jones' averment that Walker concluded that 80% or over 100% of Jones' work was SEC related is baseless and shows his complete lack of understanding of both Walker's schedule and his own witness' schedule, both of which apply the same methodology.  *See* Jones Response at p. 20.  Both Walker and Rondeau applied selected parameters to calculate Jones' SEC related work as a percentage of his total billed hours.  *See* Exs. 245 and 320.  Walker calculated that approximately 60% of all of Jones work from 2008 to 2013 was SEC related and applied that percentage to the total income identified by Rondeau.  Exs. 245; 320.  Doing so resulted in a calculation of $916,925 attributable to Jones' SEC related work.  Ex. 245.

        F.     Appropriate Disgorgement is Between $294,316 and $916,926.

In its Brief on Disgorgement the Commission set out at length three possible appropriate calculations of disgorgement.  Doc. 108, at p. 22 – 27.  The possibilities were $446,129, based on Jones' testimony; $916,926, based on Ex. 245; or $294,316, based on Jones' Exhibit 320.  Jones did not explain why these numbers were incorrect.  Jones' assertion that disgorgement should be between $27,722 and $81,464 ignores the evidence that Jones violations relate to more than 21 companies, the evidence that Jones described violative work as "consultation," and Jones' own Exhibit 320.

G. The Court Has Discretion to Award Prejudgment Interest.

Jones' assertion that the Commission never asked for prejudgment interest

is wrong.  The Commission's complaint seeks that relief.  Doc. 2 at p. 9.  Jones is

also incorrect that this Court does not have authority to order prejudgment interest.

Federal courts do have that authority.  *See SEC v. Manor Nursing Centers, Inc.,*

458 F.2d 1082 (2nd Cir. 1972).[7]  If the Court were inclined to award prejudgment

interest, the Commission could provide a prejudgment interest calculation.[8]

VII.    CONCLUSION

For the reasons stated in the Commission's Brief on Disgorgement and

above, the Court should order Jones to disgorge the gains from his violations of the

Commission's Order.

DATED:  November 19, 2015.

s/ Polly Atkinson
Polly Atkinson
AtkinsonP@sec.gov
Mark L. Williams
WilliamsML@sec.gov
U.S. Securities and Exchange Commission
Byron G. Rogers Federal Building
1961 Stout Street, Suite 1700
Denver, CO  80294-1961
(303) 844-1000

---

[7] Jones is wrong that *Manor Nursing* does not discuss prejudgment interest.  *Manor Nursing* awarded prejudgment interest to the Commission, not investors.  *Manor Nursing*, 458 F.2d at 1105.

[8] In cases involving continuing violations, the Commission generally calculates prejudgment interest from the date of the last violation.

<u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on November 19, 2015, she caused a true and correct copy of the foregoing to be served through the Court's Electronic Court Filing System (CM/ECF), which will automatically send an email notification to all parties of record.

s/Polly Atkinson