FILED
2015 DEC 18 PM 1:11
CLERK
U.S. DISTRICT
COURT

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>    Plaintiff,<br><br>v.<br><br>R. GORDON JONES,<br><br>    Defendant. | **MEMORANDUM OPINION AND ORDER REGARDING DISGORGEMENT**<br><br><br>Case No. 1:13-CV-00163-BSJ<br><br>District Judge Bruce S. Jenkins |

Following a bench trial, the court issued a Memorandum Opinion and Order finding (i) under a valid 102(e) Bar Order, R. Gordon Jones ("Jones") was not allowed to practice before the Securities and Exchange Commission ("SEC" or "Commission"), and (ii) Jones did practice before the SEC during the prohibited time period and thereby violated such Bar Order.[1]

The remaining issue before the court is the authority, method, and amount of an appropriate remedy.

Having considered the parties' briefs, the evidence and arguments of counsel present in the record, and the relevant law, the court finds (i) the court has authority to order disgorgement; (ii) disgorgement is the proper remedy to be applied in the present case; and (iii) the amount to be disgorged is $600,000.

---

[1]Mem. Op. and Order, filed Sep. 30, 2015, (CM/ECF No. 106) at 32.

## BACKGROUND[2]

On May 4, 2001, the SEC issued an order against Jones pursuant to Rule 102(e) of the

SEC's Rules of Practice—the "Jones Bar Order"—which precluded Jones from appearing or

practicing before the Commission as an accountant.[3]

The court held a bench trial July 7, 2015 through July 10, 2015 on the SEC's allegations

that Jones violated his Bar Order and profited thereby. In its September 30, 2015 Memorandum

Opinion and Order, the court found Jones did indeed violate his Bar Order's prohibition on

appearing or practicing before the Commission as an accountant.[4] Jones's prohibited conduct

included (i) creating, compiling, or editing information incorporated into filings with the

Commission, (ii) making non-quantitative accounting decisions, (iii) drafting responses to SEC

comment letters, and (iv) managing others involved in the preparation of materials filed with the

SEC.[5] The court reserved, however, on the question of disgorgement or remedy, and it instead

directed parties to file briefing on the authority, the method, and the amount of an appropriate

remedy to be applied in the present case.[6] The SEC filed its brief on disgorgement on October

20, 2015,[7] which Jones responded to on November 8, 2015.[8] The SEC filed its reply brief on

November 19, 2015.[9]

---

[2]Note: additional background information can be found in the court's prior Memorandum Opinion and Order. *See id.* at 2.

[3]*See* Ex. 136.

[4]*See* Mem. Op. and Order, filed Sep. 30, 2015, (CM/ECF No. 106) at 32.

[5]*See id.* at 12-23. Note: the court reiterates that this list is not an exclusive or exhaustive list of every form of Jones's violative conduct. The court focused on examples sufficient to demonstrate that Jones did in fact engage in conduct prohibited by and thereby violative of the Jones Bar Order. *See id.* at 12.

[6]*Id.* at 32.

[7]Br. in Supp. of Req. for Disgorgement, filed Oct. 20, 2015 (CM/ECF No. 108) [hereinafter SEC's Post-Trial Disgorgement Br.].

## DISCUSSION

Having previously determined that Jones violated a valid 102(e) Bar Order by practicing before the SEC during a period in which the Bar Order prohibited him from doing so, the remaining issue for the court is the appropriate remedy for Jones's violation. The SEC asks the court to order Jones to disgorge the funds he procured through his violation of the Bar Order.[10] Jones argues disgorgement would not be an equitable remedy in the present case and that there is no basis for its imposition.[11]

The court finds disgorgement can and should be ordered in the present case. In making this determination, the court analyzed (i) the court's authority to order the equitable remedy of disgorgement; (ii) the appropriateness of disgorgement in the present case; and (iii) the proper amount to be disgorged. The court will discuss each in turn.

### I.    Court's Authority to Order Disgorgement

The court has authority to order disgorgement. As noted by the Tenth Circuit, "Disgorgement is by nature an equitable remedy as to which a trial court is vested with broad discretionary powers."[12] Courts around the country have likewise confirmed the authority of federal courts to order the equitable remedy of disgorgement, specifically within the context of

---

[8]Def. Jones's Post-Trial Disgorgement Mem., filed Nov. 8, 2015 (CM/ECF No. 109) [hereinafter Jones's Post-Trial Disgorgement Br.].

[9]Reply in Supp. of Req. for Disgorgement, filed Nov. 19, 2015 (CM/ECF No. 111).

[10]*See* SEC's Post-Trial Disgorgement Br., *supra* note 7, at 1.

[11]*See* Jones's Post-Trial Disgorgement Br., *supra* note 8, at 26.

[12]*S.E.C. v. Maxxon, Inc.*, 465 F.3d 1174, 1179 (10th Cir. 2006) (quoting Arnold S. Jacobs, *Disclosures & Remedies Under the Securities Laws* § 20:109 (footnotes omitted)).

SEC enforcement actions.[13] Similarly, courts have found that the SEC has authority to seek an order of disgorgement from the court.[14]

Jones initially seems to concede in his brief that disgorgement is an equitable remedy that the court has authority to order. Jones stated, "The Commission devotes the lion's share of its disgorgement memo to the proposition that federal courts have the power to grant equitable relief and that 'disgorgement'—the additional remedy it seeks—is a form of equitable relief. But Jones has never disputed these two academic points. This is not the issue."[15] Instead, Jones argues "[t]he real issue is whether this court's equitable relief powers should be further exercised by additionally awarding the Commission *money*."[16] But then Jones seems to walk away from this framing of the issue—whether the court *should* order disgorgement, not whether it *could*—by stating "there is no statutory or other basis in this case for the additional imposition of an 'equitable monetary remedy'—a seeming oxymoron—whether it is labeled 'disgorgement' or something else."[17] In the remainder of his brief, Jones argues disgorgement should not—or could

---

[13]*See, e.g., S.E.C. v. Cavanagh*, 445 F.3d 105, 120-21 (2d Cir. 2006); *S.E.C. v. Rind*, 991 F.2d 1486, 1493 (9th Cir. 1993); *S.E.C. v. First City Financial Corp., Ltd.*, 890 F.2d 1215, 1230 (D.C. Cir. 1989); *S.E.C. v. Texas Gulf Sulphur Co.*, 446 F.2d 1301, 1307-08 (2d Cir. 1971); *S.E.C. v. DiBella*, 409 F. Supp. 2d 122, 130-32 (D. Conn. 2006).

[14]*See S.E.C. v. Texas Gulf Sulphur Co.*, 446 F.2d 1301, 1307-08 (2d Cir. 1971) ("There is little doubt that § 27 of the Act confers general equity power upon the district courts. Appellants' contention is that the SEC is without the authority to request the exercise of these powers. However, as stated in *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 391, 90 S.Ct. 616, 625, 24 L.Ed.2d 593 (1970): 'We cannot fairly infer from the Securities Exchange Act of 1934 a purpose to circumscribe the courts' power to grant appropriate remedies.' While Mills was dealing with relief to private litigants, we deem the above statement to be fully applicable in enforcement actions by the SEC. Thus we hold that the SEC may seek other than injunctive relief in order to effectuate the purposes of the Act, so long as such relief is remedial relief and is not a penalty assessment."); *S.E.C. v. DiBella*, 409 F. Supp. 2d 122, 130-32 (D. Conn. 2006) ("These statutory references evidence Congress' acknowledgement and encouragement of the SEC's long held authority to seek disgorgement in civil actions."); *see also S.E.C. v. Manor Nursing Centers, Inc.*, 458 F.2d 1082, 1103-04 (2d Cir. 1972) ("Accordingly, we reiterate our previous holding in *Texas Gulf Sulphur* that the SEC may seek other than injunctive relief to effectuate the purposes of the federal securities laws.").

[15]Jones's Post-Trial Disgorgement Br., *supra* note 8, at 2.

[16]*Id.* (emphasis in original).

[17]*Id.*

4

not—be ordered, because his Bar Order violation does not involve a victim, a fraud, or a violation of federal securities laws.[18] In such absence, Jones argues disgorgement is not an equitable remedy in the present case but a damages remedy at law. He cites the United States Supreme Court case *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204 (2002) in support of this contention.[19] Additionally, Jones argues that since disgorgement is not equitable, it is a civil fine, penalty, forfeiture, or criminal remedy barred by the five-year statute of limitations under 28 U.S.C. § 2462.[20]

The court disagrees with Jones's arguments that disgorgement is not an equitable remedy in the present case. First, the argument that a victim is necessary in order for disgorgement to be equitable misunderstands the purpose of disgorgement. In a securities enforcement action, the primary purpose of disgorgement is not to compensate victims.[21] "Instead, disgorgement has been used by the SEC and courts to prevent wrongdoers from unjustly enriching themselves through violations, which has the effect of deterring subsequent fraud."[22]  "As the Second Circuit stated in *SEC v. Commonwealth Chem. Sec.*, 574 F.2d 90 (2d Cir.1978), 'the primary purpose of disgorgement is not to compensate investors. Unlike damages, it is a method of forcing a defendant to give up the amount by which he was unjustly enriched.' *Id.*, at 102."[23] "The

---

[18]*See id.* at 7-9.

[19]*See id.* at 8-9.

[20]*See id.* at 14-15.

[21]*S.E.C. v. Cavanagh*, 445 F.3d 105, 117 (2d Cir. 2006).

[22]*Id.*

[23]*S.E.C. v. DiBella*, 409 F. Supp. 2d 122, 129 (D. Conn. 2006).

emphasis on public protection, as opposed to simple compensatory relief, illustrates the equitable nature of the remedy."[24]

Second, there is no evidence that an absence of fraud would transform disgorgement in the present case into something other than an equitable remedy. As an initial matter, merely because courts have ordered disgorgement in fraud cases does not mean disgorgement is only equitable in fraud cases. Further, several courts have granted disgorgement outside the context of fraud.[25] Jones cites no contrary cases.

Third, there is likewise no support for Jones's argument that his Bar Order violation is an insufficient basis for ordering disgorgement. Jones identifies no case in which the SEC sought disgorgement for a bar order violation and disgorgement was denied.[26] In contrast, the SEC cites three cases where a court ordered disgorgement for bar order violations: (i) *S.E.C. v. Taber*, 2013 WL 6334375 (S.D.N.Y. Dec. 4, 2013); (ii) *S.E.C. v. Martino*, 255 F. Supp. 2d 268 (S.D.N.Y. 2003); and (iii) *S.E.C. v. Telsey*, 1991 WL 72854 (S.D.N.Y. Mar. 13, 1991).[27]

There are strong similarities between *S.E.C. v. Taber* and the present case. In *S.E.C. v. Taber*, Michael H. Taber is subject to a Rule 102(e) bar order suspending him from appearing or

---

[24]*S.E.C. v. Cavanagh*, 445 F.3d 105, 117 (2d Cir. 2006) (citing *Commonwealth Chem. Sec., Inc.*, 574 F.2d 90, 102 (2d Cir. 1978); *SEC v. Petrofunds, Inc.*, 420 F.Supp. 958, 960 (S.D.N.Y. 1976)); *see also S.E.C. v. First City Financial Corp., Ltd.*, 890 F.2d 1215, 1230 (D.C. Cir. 1989) ("Disgorgement is an equitable remedy designed to deprive a wrongdoer of his unjust enrichment and to deter others from violating the securities laws.").

[25]*See, e.g., S.E.C. v. Merch. Capital, LLC*, 311 F. App'x 250 (11th Cir. 2009); *S.E.C. v. M & A W., Inc.*, 538 F.3d 1043, 1054 (9th Cir. 2008); *S.E.C. v. Cavanagh*, 445 F.3d 105 (2d Cir. 2006); *S.E.C. v. First City Financial Corp., Ltd.*, 890 F.2d 1215 (D.C. Cir. 1989).

[26]This is in contrast to Jones's arguments surrounding *In the Matter of Robert W. Armstrong, III*, 2005 WL 1498425 (June 24, 2005) and *S.E.C. v. Prince*, 942 F. Supp. 2d 108 (D.D.C. 2013). *See* Jones's Post-Trial Disgorgement Br., *supra* note 8, at 12-13. The SEC did not seek disgorgement in either case, and, as a consequence, the issue was never discussed.

[27]*See* SEC's Post-Trial Disgorgement Br., *supra* note 7, at 8.

practicing before the SEC as an accountant.[28] Nonetheless, Taber engaged in prohibited behavior, including drafting and editing footnotes to financial statements and editing data and other information that was incorporated into SEC filings.[29] The SEC sought and was granted a court order enforcing Taber's compliance with the bar order.[30] In addition, the SEC sought and was granted disgorgement of the monies Taber gained by violating the bar order.[31] The court found, "Once a district court finds a federal securities law violation, 'it has broad equitable power to fashion appropriate remedies, including ordering that culpable defendants disgorge their profits.'"[32] And consistent with that "broad equitable power" to order defendants to disgorge their profits, the court ordered disgorgement against Taber in the amount of $400,000.[33]

Likewise, *S.E.C. v. Martino* and *S.E.C. v. Telsey* support this court's authority to order disgorgement in the present case. Though neither is as similar to the present case as *S.E.C. v. Taber*, each considers the violation of an SEC bar order and the disgorgement remedy. In *S.E.C. v. Martino*, a SEC bar order precluded Carol Martino from associating with any broker, dealer, investment adviser, investment company or municipal securities dealer.[34] Notwithstanding the bar order, Martino engaged in brokerage activities and stock manipulation.[35] The court found Martino's violation of the bar order to be a basis for ordering $4.416 million in disgorgement: "Martino's repeated and flagrant violations of securities laws and Bar Order for more than three

---

[28]*See* 2013 WL 6334375, at *1 (S.D.N.Y. Dec. 4, 2013).

[29]*See id.*

[30]*See id.*

[31]*See id.* at *1, 3.

[32]*Id.* at *2 (citing *SEC v. First Jersey Secs., Inc.*, 101 F.3d 1450, 1474 (2d Cir.1996)).

[33]*See id.* at *3.

[34]*See S.E.C. v. Martino*, 255 F. Supp. 2d 268, 272 (S.D.N.Y. 2003).

[35]*See id.* at 283-88.

years more than amply demonstrate the Commission's entitlement to disgorgement."[36] Similarly,

in *S.E.C. v. Telsey*, a SEC bar order prevented Steven Telsey from associating with any broker,

dealer, registered investment adviser or registered investment company.[37] Telsey nonetheless

violated that order by engaging in multiple business relationships with broker-dealers registered

with the SEC.[38] As a remedy, the court ordered Telsey to disgorge the sums he received from his

violations.[39]

Thus, the cases *S.E.C. v. Taber*, *S.E.C. v. Martino*, and *S.E.C. v. Telsey* demonstrate that

disgorgement in SEC bar order cases is an equitable remedy within the court's equitable power.

Finally, the court is unpersuaded that the case *Great-West Life & Annuity Ins. Co. v.*

*Knudson*, 534 U.S. 204 (2002) should be read as indicating that disgorgement is not an equitable

remedy in the present case. In *Great-West*, the Supreme Court analyzed § 502(a)(3) of the

Employee Retirement Income Security Act ("ERISA"), which authorizes a civil action seeking

"appropriate equitable relief."[40] The petitioners sought to compel the plan beneficiary to comply

with a plan provision requiring the plan beneficiary to reimburse the plan for any proceeds

recovered from third parties.[41] The petitioners argued their suit was authorized under § 502(a)(3)

as equitable relief because they sought restitution.[42] After a discussion of restitution at law verses

restitution in equity, however, the Supreme Court disagreed. The Supreme Court held that

because petitioners' claim was not that the plan beneficiary held particular funds belonging to

---

[36]*See id.* at 289.

[37]*See* 1991 WL 72854, at *1 (S.D.N.Y. Mar. 13, 1991).

[38]*See id.* at *1-2.

[39]*See id.* at *2.

[40]*Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 209 (2002).

[41]*See id.* at 208.

[42]*See id.* at 212.

them, but that they were "contractually entitled to *some* funds," the restitution they sought was legal in nature.[43]

Jones does not clarify why the Supreme Court's analysis of § 502(a)(3) of ERISA and the restitution remedy should be determinative in this court's analysis of Jones's violation of a 102(e) Bar Order and the disgorgement remedy. Jones cites to no case finding *Great-West* pertinent in an SEC enforcement action seeking disgorgement, and the court has found none. Instead, two district courts have found *Great-West* does not prevent the SEC from pursuing disgorgement in enforcement actions.[44]

First, in *S. E.C. v. Buntrock* the court analyzed *Great-West* and held as follows:

> [W]e agree with the SEC that the disgorgement remedy it seeks is equitable in nature and, therefore, an acceptable form of relief. As the SEC has accurately stated, disgorgement has historically been viewed as an equitable remedy employed against those who profit by abusing positions of trust. In essence, it deprives a wrong-doer of ill-gotten gains. Compensation is not an element of the claim. In fact, the Supreme Court has held, in the ERISA context, that disgorgement is a viable equitable remedy to recover improperly received profits. *See Harris Trust & Savings Bank v. Salomon Smith Barney, Inc.,* 530 U.S. 238, 250–51, 120 S.Ct. 2180, 147 L.Ed.2d 187 (2000); *Mertens v. Hewitt Associates,* 508 U.S. 248, 260, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993). Furthermore, virtually every federal court of appeals has recognized disgorgement as an appropriate equitable remedy under the securities laws. *See, e.g., SEC v. Lipson,* 278 F.3d 656, 662–63 (7th Cir.2002); *SEC v. Infinity Group Co.,* 212 F.3d 180 (3d Cir.2000); *SEC v. Rind,* 991 F.2d 1486 (9th Cir.1993); *SEC v. Commonwealth Chem. Sec., Inc.,* 574 F.2d 90 (2d Cir.1978). **We view these decisions as consistent with the Supreme Court's holding in *Great–West.***

---

[43]*See id.* at 214 (emphasis in original).

[44]The law review article Jones cites acknowledges the absence of case law supporting Jones's position on *Great-West. See* Russell G. Ryan, "The Equity Façade of SEC Disgorgement," *Harvard Bus. L. Rev. Online* (2013), at 11 n.66 ("Only two district court opinions appear to have squarely considered the relevance of *Great-West* to SEC disgorgement, and both ruled in the SEC's favor. SEC v. DiBella, 409 F. Supp. 2d 122, 132-33 (D. Conn. 2006); SEC v. Buntrock, 2004 U.S. Dist. LEXIS 9495, at *6-9 (N.D. Ill. May 25, 2004).").

> **Therefore, we conclude that the disgorgement remedy is equitable in nature and, thus, is within the arsenal of weapons available to the SEC when prosecuting enforcement actions.** This conclusion is based not only the applicable federal precedent but also on our understanding of Congress' intent in creating this enforcement regime.

*S.E.C. v. Buntrock*, 2004 WL 1179423, at *3 (N.D. Ill. May 25, 2004) (emphasis added).

Second, in *S.E.C. v. DiBella* the court cited favorably to *S.E.C. v. Buntrock* and ruled as follows:

> Here, the SEC presents not a claim for damages, but rather a typical and traditional claim for equitable relief in the form of disgorgement. "[D]isgorgement has historically been viewed as an equitable remedy employed against those who profit by abusing positions of trust. In essence, it deprives a wrong-doer of ill-gotten gains." *Buntrock*, 2004 WL 1179423, *3, 2004 U.S. Dist. LEXIS 9495, at *7-*8 (permitting SEC disgorgement claim despite defendant's claim that *Great-West* precludes SEC from seeking disgorgement). **Disgorgement is equitable in nature and therefore *Great-West* does not preclude the SEC's claim.**

*S.E.C. v. DiBella*, 409 F. Supp. 2d 122, 133 (D.Conn. 2006) (emphasis added).

Here, the court reaches the same conclusion reached by the courts in *S.E.C. v. Buntrock* and *S.E.C. v. DiBella*—disgorgement is an equitable remedy that the SEC is authorized to seek and the court is authorized to order. The *Great-West* decision does not dictate otherwise.[45]

## II.    Appropriateness of Disgorgement in the Present Case

Having determined that disgorgement is authorized, the court must next determine whether disgorgement is appropriate in the present case. The court concludes that it is, because (i) disgorgement is equitable and therefore not barred by the five-year statute of limitations in 28

---

[45]*See also S.E.C. v. DiBella*, 409 F. Supp. 2d 122, 131 (D. Conn. 2006) ("Congress has made various amendments to the securities laws, including the Private Securities Litigation Reform Act (1995) and the Sarbanes-Oxley Act (2002), but has declined these opportunities to limit or eliminate the SEC's practice of seeking and obtaining orders of disgorgement. In fact, a review of the text and legislative history of the various securities laws supports the continued recognition by the courts of the SEC's disgorgement authority.").

U.S.C. § 2462; and (ii) disgorgement is an important means of deterring other bar order

violations.

    A.  <u>Disgorgement Not Barred by Five-Year Statute of Limitations</u>

      In addition to arguing disgorgement is not an equitable remedy in the present case, Jones

argues that disgorgement is therefore a civil fine, penalty, forfeiture, or criminal remedy barred

by the five-year statute of limitations described in 28 U.S.C. § 2462.[46]

      Section 2462 requires that enforcement of any civil fine, penalty, or forfeiture be

commenced within five years from the date when the claim first accrued.[47] Section 2462 is

simply inapplicable in the present case, as disgorgement is an equitable remedy and not a civil

fine, penalty, or forfeiture.[48] And the U.S. Supreme Court case *Gabelli v. S.E.C.*, cited by Jones,

does not say otherwise. In *Gabelli v. S.E.C.*, the SEC sought civil penalties against investment

advisors for aiding and abetting fraud.[49] The question before the Supreme Court was whether the

---

[46]*See* Jones's Post-Trial Disgorgement Br., *supra* note 8, at 14-15.

[47]28 U.S.C. § 2462.

[48]*See Riordan v. S.E.C.*, 627 F.3d 1230, 1234 (D.C. Cir. 2010) ("The five-year statute of limitations in 28 U.S.C. § 2462 applies to an action for the enforcement of a 'fine, penalty, or forfeiture.' Does that list include disgorgement? This Court has said no. We have reasoned that disgorgement orders are not penalties, at least so long as the disgorged amount is causally related to the wrongdoing. *See, e.g., Zacharias v. SEC*, 569 F.3d 458, 471–72 (D.C.Cir.2009); *SEC v. Bilzerian*, 29 F.3d 689, 696 (D.C.Cir.1994); *SEC v. First City Financial Corp.*, 890 F.2d 1215, 1231 (D.C.Cir.1989). Because we have held that disgorgement is not a 'civil penalty,' the Court in *Zacharias* held that disgorgement was not subject to the five-year statute of limitations. 569 F.3d at 471–72. In light of our precedents, we must reject Riordan's similar argument here." (footnote omitted)). *See also S.E.C. v. DiBella*, 409 F. Supp. 2d 122, 127 (D. Conn. 2006) ("Section 2462 does not preclude disgorgement actions brought by the SEC where the claim seeks to 'deprive[ ] one of wrongfully obtained proceeds.' *Lorin,* 869 F.Supp. at 1122. '[D]isgorgement merely returns the wrongdoer to the status quo before any wrongdoing had occurred.' *Id.* 'In contrast, fines, penalties, and forfeitures alter the status quo before the unlawful activity took place.' *Id.* Penalties and forfeitures are meant to be punitive. They punish a wrongdoer for his or her violation. Disgorgement, on the other hand, merely dispossesses the wrongdoer of the profits earned from illegal conduct."); *S.E.C. v. Texas Gulf Sulphur Co.*, 446 F.2d 1301, 1308 (2d Cir. 1971) ("Appellants, of course, contend that the required restitution is indeed a penalty assessment . . . This contention overlooks the realities of the situation . . . Restitution of the profits on these transactions merely deprives the appellants of the gains of their wrongful conduct.").

[49]*See* 133 S. Ct. 1216, 1219-20 (2013).

discovery rule applied to § 2462, and the Supreme Court said no.[50] Importantly, the Supreme Court dealt with civil penalties—not disgorgement. The Supreme Court noted, "The SEC also sought injunctive relief and disgorgement, claims the District Court found timely on the ground that they were not subject to § 2462. Those issues are not before us."[51] The *Gabelli v. S.E.C.* decision does not require applying a statute of limitations to disgorgement.[52]

Thus, the court finds disgorgement in the present case is not barred by the five-year statute of limitations in § 2462 and is therefore appropriate.[53]

### B. Importance of Disgorgement

The court finds disgorgement is appropriate in the present case as an important deterrent to other bar order violations. "Disgorgement plays a central role in the enforcement of the securities laws."[54] "The primary purpose of disgorgement in securities law cases 'is to deprive violators of their ill-gotten gains, thereby effectuating the deterrence objectives of those laws.'"[55] "The effective enforcement of the federal securities laws requires that the SEC be able to make

---

[50] *See id.* at 1224.

[51] *Id.* at 1220 n.1.

[52] *See S.E.C. v. Geswein*, 2 F. Supp. 3d 1074, 1084 (N.D. Ohio 2014) ("Again, in its earlier Order, this Court further determined, that 'to the extent that the SEC seeks to enjoin [Defendants] from violating or aiding and abetting the violation of securities laws, or an order directing them to disgorge profits to remedy an alleged past wrong and protect the public from future harm, Section 2462 does not apply.' (9/29/11 Order, ECF DKT # 63 at 5). Since those claims were not before the Supreme Court in *Gabelli* . . . this Court has no reason to reconsider its own decision in that regard."). *See also S.E.C. v. Amerindo Inv. Advisors, Inc.*, 2014 WL 405339, at *9 (S.D.N.Y. Feb. 3, 2014) ("[T]he statute of limitations at issue in *Gabelli* applies only to civil penalties, and does not prevent a finding of liability or an awarding of other kinds of remedies.").

[53] The court notes *S.E.C. v. Graham*, wherein the U.S. District Court for the Southern District of Florida found that § 2462 reached all forms of relief sought by the SEC in that case, including disgorgement. 21 F. Supp. 3d 1300, 1309 (S.D. Fla. 2014). The court finds *Graham* unpersuasive and inapplicable to the case at hand. This court's position in declining to follow *Graham* is consistent with the positions of other courts that have also considered *Graham*. *See S.E.C. v. Stoecklien*, 2015 WL 6455602 (S.D. Cal. Oct. 26, 2015); *S.E.C. v. Funinaga*, 2014 WL 4977334 (D. Nev. Oct. 3, 2014); *S.E.C. v. LeCroy*, 2014 WL 4403147 (N.D. Ala. Sept. 5, 2014).

[54] *S.E.C. v. Rind*, 991 F.2d 1486, 1491 (9th Cir. 1993).

[55] *S.E.C. v. Taber*, 2013 WL 6334375, at *2 (S.D.N.Y. Dec. 4, 2013) (citing *SEC v. Credit Bancorp, Ltd.*, No. 99 Civ. 11395, 2011 WL 666158, at *2 (S.D.N.Y. Feb. 14, 2011)).

violations unprofitable. The deterrent effect of an SEC enforcement action would be greatly

undermined if securities law violators were not required to disgorge illicit profits."[56] "By

deterring violations of the securities laws, disgorgement actions further the Commission's public

policy mission of protecting investors and safeguarding the integrity of the markets."[57]

Thus, the court determines that disgorgement is an appropriate remedy for Jones's Bar

Order violations.

### III.   Amount of Disgorgement

Having found that disgorgement is both authorized and appropriate in the present case,

the court must next determine the proper amount to be disgorged.[58] The district court in *S.E.C. v.*

*Taber* provides helpful analysis on calculating a disgorgement amount:

> The district court "has broad discretion not only in determining
> whether or not to order disgorgement but also in calculating the
> amount to be disgorged." *First Jersey Secs.,* 101 F.3d at 1474–75
> (citation omitted). In calculating such amount, the court "should
> include all gains flowing from illegal activities, plus prejudgment
> interest, and 'need only be a reasonable approximation of profits
> causally connected to the violation.' " *Credit Bancorp, Ltd.,* 2011
> WL 666158, at *2 (quoting *First Jersey Secs.,* 101 F.3d at 1475);
> *see also SEC v. Absolutefuture.com,* 393 F.3d 94, 96 (2d Cir.2004)
> ("[T]he amount of disgorgement, as an equitable remedy, is
> determined by the amount of profit realized by the defendant.")
> (citation omitted). This calculation does not require exactitude;
> rather, "[s]o long as the measure of disgorgement is reasonable,
> 'any risk of uncertainty should fall on the wrongdoer whose illegal
> conduct created that uncertainty.' " *SEC v. Warde,* 151 F.3d 42, 50

---

[56]*S.E.C. v. Manor Nursing Centers, Inc.,* 458 F.2d 1082, 1104 (2d Cir. 1972); *see also S.E.C. v. Texas Gulf Sulphur Co.,* 446 F.2d 1301, 1308 (2d Cir. 1971) ("It would severely defeat the purposes of the Act if a violator of Rule 10b-5 were allowed to retain the profits from his violation.").

[57]*S.E.C. v. Rind,* 991 F.2d 1486, 1491 (9th Cir. 1993).

[58]Jones notes in his briefing that "[a]fter the close of the Commission's case-in-chief, Jones made a motion to dismiss the Commission's claim of disgorgement on the ground that the Commission had put on insufficient evidence of any amount." Jones's Post-Trial Disgorgement Br., *supra* note 8, at 3. Jones states that the court needs to rule on Jones's outstanding motion. *See id.* The court disagrees with Jones's contention that the SEC put on insufficient evidence of disgorgement. To the extent necessary, the court herein denies Jones's motion to dismiss.

(2d Cir.1998) (quoting *SEC v. Patel,* 61 F.3d 137, 140 (2d Cir.1995)).

2013 WL 6334375, at *2 (S.D.N.Y. Dec. 4, 2013). Other courts have likewise found a reasonable approximation of ill-gotten profits to be sufficient in calculating disgorgement.[59] And requiring approximation rather than exactitude makes particular sense in the present case, where the record amply demonstrates that Jones's QuickBooks records often described his work as "consultation," even where he was actually engaging in Bar Order violating behavior.[60]

The SEC puts forth three possible calculations for disgorgement.[61] The first suggested calculation relies on Jones's investigative testimony that roughly 50 percent of J&J Consultants LLC's ("J&J") business from 2001 through 2013 was financial statement preparation work, and of that work, roughly 60 percent was for public companies.[62] This testimony suggests 30 percent of J&J's business from 2001 through 2013 was financial statement preparation for public companies.[63] As such, the SEC's first suggested disgorgement calculation multiplies Jones's J&J income from 2008 through 2013—a gross amount of $1,487,097—by 30 percent,[64] for a total disgorgement amount of $446,129.[65]

---

[59] *See S.E.C. v. Curshen,* 372 F. App'x 872, 883 (10th Cir. 2010) ("As for the disgorgement order, '[t]he SEC is entitled to disgorgement upon producing a reasonable approximation of [Mr. Curshen's] ill-gotten gains.' *SEC v. Calvo,* 378 F.3d 1211, 1217 (11th Cir.2004)."); *S.E.C. v. First City Financial. Corp.,* 890 F.2d 1215, 1231 (D.C. Cir. 1989) ("Accordingly, disgorgement need only be a reasonable approximation of profits causally connected to the violation.").

[60] *See* Hr'g Tr., (CM/ECF No. 102-1) at 203:25-224:25.

[61] *See* SEC's Post-Trial Disgorgement Br., *supra* note 7, at 15-21.

[62] *See id.* at 16; Hr'g Tr., (CM/ECF No. 102) at 186:14-187:18, 189:4-190:22.

[63] *See* SEC's Post-Trial Disgorgement Br., *supra* note 7, at 16.

[64] *See id.*; Ex. 319.

[65] *See* SEC's Post-Trial Disgorgement Br., *supra* note 7, at 21.

14

The SEC's second suggested disgorgement calculation analyzes Jones's QuickBooks accounting records. It embraces all public companies for which Jones performed either SEC related work or work described as "consultation."[66] Starting with year 2008,[67] the SEC totaled the number of hours billed for SEC related or "consultation" work that year, and then divided that number by the total number of hours Jones billed for that year.[68] The resulting percentage was then multiplied against Jones's total taxable income for 2008 to ascertain Jones's 2008 earnings attributable to SEC related or "consultation" work. This method was repeated for the years 2009, 2010, 2011, 2012, and 2013.[69] The SEC's second suggested disgorgement calculation adds together each year's earnings attributable to SEC related or "consultation" work for a total disgorgement amount of $916,926.[70]

The SEC's third suggested disgorgement calculation follows the same method as the second, but it assumes as true Jones's argument the disgorgement should be limited to the 21 public companies identified in Lynn Turner's expert report as companies Jones inappropriately performed work for.[71] The SEC's third suggested calculation relies on Jones's Exhibit 320 and

---

[66]See id. at 17-18.

[67]At trial, the SEC confirmed that it is only seeking disgorgement for 2008 forward, even though the SEC alleged a more expansive time period for Bar Order violations. See Hr'g Tr., (CM/ECF No. 104-1) at 555:10-556:6.

[68]See SEC's Post-Trial Disgorgement Br., *supra* note 7, at 20; Ex. 245.

[69]See SEC's Post-Trial Disgorgement Br., *supra* note 7, at 20; Ex. 245.

[70]See SEC's Post-Trial Disgorgement Br., *supra* note 7, at 21; Ex. 245.

[71]See SEC's Post-Trial Disgorgement Br., *supra* note 7, at 17-18.

15

calculates Jones's profits for all of Jones's work for the 21 companies.[72] This results in a total disgorgement amount of $292,316.[73]

In opposition to the SEC's suggested disgorgement amounts, Jones put forth his own calculation. Jones argues that only work related to financial statement preparation for the 21 companies should be a basis for disgorgement.[74] Thus, relying on Exhibit 319, Jones argues for a total disgorgement amount between $27,722 and $81,464.[75]

The court rejects the suggestion that a disgorgement calculation is limited to the 21 companies identified in Lynn Turner's expert report. That report does not indicate that the 21 companies identified are an exhaustive list of all public companies for which Jones performed impermissible work.[76] Neither was Jones's testimony at trial limited to work performed exclusively for those 21 companies. It would undermine the important deterrent effect of disgorgement if the court were to artificially limit the disgorgement analysis. Thus, the court rejects both the SEC's and Jones's disgorgement calculations premised on a 21 company limitation.

---

[72]*See id.* at 18, 20-21; Ex. 320.

[73]*See* SEC's Post-Trial Disgorgement Br., *supra* note 7, at 21; Ex. 320. Note: Exhibit 320 identifies $292,316 as the portion of total taxable income related to the 21 companies, not the $294,316 figure the SEC suggests.

[74]*See* Jones's Post-Trial Disgorgement Br., *supra* note 8, at 21-24.

[75]*See id;* Ex. 319.

[76]*See* Expert Report of Lynn Turner, Ex. 263.

Instead, the court finds $600,000 to be a reasonable approximation of the profits Jones derived from his Bar Order violations. Disgorgement in that amount is supported by the evidence in the record and provides an appropriate remedy for Jones's Bar Order violations.[77]

The court therefore orders disgorgement in the amount of $600,000.[78]

## CONCLUSION

The court finds disgorgement is both authorized and appropriate in the present case, and disgorgement in the amount of $600,000 reasonably approximates Jones's profits from his Bar Order violations.

Judgment shall be entered against Jones for disgorgement in the amount of $600,000.

DATED this **18** day of December, 2015.

<br>

_____
Bruce S. Jenkins
United States Senior District Judge

---

[77]Jones's total gross income and total net income for 2008 through 2013 is $1,487,097 and $1,151,330, respectively. *See* Ex. 319, Ex. 320. A disgorgement amount of $600,000 is approximately 40 percent of Jones's total gross income and approximately 52 percent of Jones's total net income. Regardless of whether one uses total gross income or total net income as a reference point, the court believes $600,000 to be an equitable and reasonable disgorgement amount.

[78]The court finds $600,000 a sufficient remedy for Jones's Bar Order violations. The court declines to additionally impose prejudgment interest on that amount. *See S.E.C. v. Taber*, 2013 WL 6334375, at *3 (S.D.N.Y. Dec. 4, 2013) ("The determination of whether to impose prejudgment interest is at the discretion of the court." (citing *S.E.C. v. First Jersey Secs., Inc.*, 101 F.3d 1450, 1476 (2d Cir. 1996))).